(No. 21282.—

THE JACKSONVILLE HOTEL BUILDING CORPORATION, Appellant, *vs.* THE DUNLAP HOTEL COMPANY, Appellee.

*Opinion filed October 22, 1932—Rehearing denied Dec. 13, 1932*

BARBER & BARBER, and BELLATTI, SAMUELL & MORIARTY, for appellant.

GILLESPIE, BURKE & GILLESPIE, for appellee.

Mr. CHIEF JUSTICE HEARD delivered the opinion of the court:

This cause is here upon a certificate of importance from the Appellate Court for the Third District for a review of its judgment reversing, on error, a decree of the circuit court of Sangamon county for the specific performance of a contract by appellee, the Dunlap Hotel Company, in favor of appellant, the Jacksonville Hotel Building Corporation.

M. F. Dunlap, a banker of Jacksonville, Illinois, recognizing the need of the city of Jacksonville for a modern hotel building, in 1922 called into conference several citizens and commenced the promotion of a building corporation to construct a hotel in that city. E. O. and E. S. Perry, operators of the New Leland Hotel at Springfield, Illinois, hearing of the proposed hotel, called upon Dunlap with reference to a lease of the building when completed and thereafter carried on negotiations in relation thereto. Preliminary plans of the proposed hotel were drawn by Jarvis Hunt, a Chicago architect, at the direction of Dunlap, and negotiations were carried on between the parties upon the basis of those plans. On June 11, 1924, Dunlap made a written

proposition to the Perrys, which was on that date accepted in writing by them. This proposition, so far as here material, was in substance as follows:

"M. F. Dunlap, on behalf of Jacksonville Hotel Company, a corporation, with a capital stock of $200,000, fully subscribed, now in process of organization, makes the following proposal to E. O. Perry and E. S. Perry, of Springfield, Illinois: That said corporation will acquire a site in Jacksonville, Illinois, and erect thereon a hotel building, the site to be either on property lying east of the present Dunlap House and approximately as shown on a certain block plan prepared by T. C. MacVicar dated February 14, 1924, or on the site of the present Dunlap House and approximately as shown on the block plan prepared by T. C. MacVicar and dated January 16, 1924; that the said hotel shall be of the approximate dimensions of one hundred and eighty (180) feet by eighty-eight (88) feet, and shall be five stories high, and of approximately one hundred and twenty (120) to one hundred and thirty (130) rooms' capacity, and shall be constructed along the general lines of certain plans prepared by Jarvis Hunt, all dated January 16, 1924, except that of the first floor plan prepared by the same architect which is dated February 6, 1924, and also corresponding approximately to the elevation plan prepared by the same architect dated February 14, 1924, all of which plans have already been submitted to you and approved by you, it being expressly understood, however, that the final working plans as to matters of detail shall be subject to your approval if you accept the proposition; that said corporation will proceed with the erection of such hotel building with all reasonable dispatch; that said corporation will promptly, after securing its certificate of incorporation, enter into an agreement with you for a lease of the said premises to you, or, at your option, to the Perry-Rigby Hotel Company, or to a new hotel company to be organized by you for the purpose of operating the said hotel, provided

said new company has at the time of taking such lease a net worth at least equal to the cost of furnishing said hotel, complete and ready to operate, in keeping with the character of hotel erected by the lessor corporation, said lease to be for the term of twenty years from the date said building is tendered to such lessee ready for occupancy, at a yearly rental of an amount equal to six and one-fourth per cent ' on the audited cost of said leased property, to be determined as hereinafter provided, payable in equal monthly installments in advance."

The first completed plans for the hotel building are dated September 25, 1924, and E. S. Perry, after examining them, on October 29, 1924, approved the same in writing. The building, however, was not built in accordance with these plans. Bids were taken upon them which exceeded the maximum amount specified by Dunlap, and in his judgment it became necessary to reduce the cost, and to accomplish that result, J. B. French, the best bidder, was called in, and after discussion it was agreed between him and Dunlap's representatives that he should proceed with the building with certain changes to be worked out by the architect, and such changes are shown by plans dated January 23, 1925. These plans of January 23 were not assented to by either of the Perrys, and it appears from the weight of the evidence that no revision or changes of plans and specifications were submitted to the Perrys. The architect's representative in charge of the job testified that at no time did he consult the Perrys with reference to the changes in the bids or the plans of January 23, 1925. The erection of the building in accordance with the plans of January 23, 1925, proceeded, and in the late fall of 1925 the hotel building appeared to be nearing completion and all parties seemed anxious to have it opened before the holidays. In October, 1925, the Perrys caused the Dunlap Hotel Company to be incorporated and commenced buying equipment with which to furnish the hotel. Neither Edward S. nor E. O. Perry

was an engineer or a builder, and from their testimony and the proofs in this case neither had knowledge of the change of plans in the construction of the building. Appellant notified appellee that the building would be ready for occupancy on November 30, 1925. Appellee moved into the building on December 1, 1925, before the building was completed. For some time there was talk about remitting one-half of a month's rent, and on March 1, 1926, appellee paid one and one-half month's rent on the basis of interest on $400,000, but it was agreed by all parties that the cost of the building was not then known. No lease was ever signed by the Perrys or by appellee. In the organization of appellee the two Perrys and Gertrude S. Perry were the stockholders in the corporation. On January 9, 1926, S. W. Straus acquired a financial interest in the corporation and became a director, taking over the interest of Gertrude S. Perry. The record does not show the various corporate interests of these parties in appellee. Thereafter negotiations were had between Dunlap and the Perrys concerning the proposed lease from appellant to appellee, and on March 11, 1926, appellee's attorney wrote Dunlap a letter with reference thereto, containing, among other things, the following: "An examination of the plans and the contract discloses such wide differences between the building contemplated and the building actually erected that a lease of the kind specified cannot be justly based upon the specifications for the payment of rents, the reason being that the lessee would get a hotel with fewer rooms, inferior construction which would result in greater expense of maintenance, excessive insurance charges, and general lack of compliance with the plans upon which the rental was to be based. * * * I wish you, however, to understand that my clients are ready and willing to enter into a lease and pay rents in accordance with the terms of the contract of June 11, 1924, if you or the hotel company will furnish them such a building as that contract obligates you

and them to build, and I hereby offer for them to execute such a lease on such a building."

On April 10, 1926, the Jacksonville Hotel Building Corporation, by M. F. Dunlap, president, executed and tendered to the Perrys a twenty-year lease of the building from December 1, 1925, to November 30, 1945, which lease the Perrys refused to accept and execute. Thereafter appellant filed its bill of complaint in the circuit court of Sangamon county against E. O. and E. S. Perry, as defendants, for specific performance, and prayed that they be decreed to accept and execute a lease of the hotel premises according to the terms of the agreement above mentioned. The Perrys answered denying appellant's right to specific performance, and filed a cross-bill asking for an auditing and a decree for the performance of the original contract with Dunlap. Appellee, by leave of court, appeared as an intervenor, adopted the answer of the Perrys and filed a cross-bill asking for the dismissal of the original bill and for a compliance with the original contract. The cause was heard and a decree entered dismissing the bill as to the Perrys and ordering appellee to execute the lease tendered by appellant. No disposition of appellee's cross-bill was made. To review this decree appellee sued out a writ of error from the Appellate Court for the Third District. No appeal was taken from the dismissal of the bill as to the Perrys, and their rights against Dunlap and appellant and their rights against the Perrys were not involved either in the Appellate Court or in this court.

Appellant filed in the Appellate Court two pleas of release of errors. These pleas were founded upon and alleged the institution of an action at law to the November term, 1929, in the circuit court of Morgan county, Illinois, by the Jacksonville Hotel Building Corporation against the Dunlap Hotel Company for the recovery of $122,298.63 in rents, interest, insurance and taxes claimed to be due under a lease executed by the master in chancery in accordance

with the decree here reviewed to October 1, 1929, and the filing therein by the Dunlap Hotel Company of a plea of general issue supported by an affidavit of merits. The first four counts of the declaration declared specifically upon amounts claimed under the lease; the fifth was for use and occupation; the sixth for money laid out and expended, and the seventh for money due and owing upon an accounting. Only the first four counts were supported by plaintiff's affidavit of claim. The Dunlap Hotel Company's plea of general issue to this declaration was supported by an affidavit of merits. This affidavit showed merely that $7442.01 of the amount claimed was in contravention of the terms of the decree upon which plaintiff was suing. It specifically stated that defendant was referring to the decree simply because it was compelled and forced to do so by reason of the unjust and wrongful demand of plaintiff for that amount in excess of what it was entitled to under the decree, and further specifically stated that defendant was not thereby acquiescing in, ratifying, acknowledging or affirming the decree or accepting any benefit or advantage thereunder or waiving or releasing any errors therein. Thereupon, on November 23, 1929, without any action or ruling of the court upon the question, plaintiff consented to the deduction of $7442.01 from the amount of its claim and moved the court for judgment for the balance shown by its affidavit of claim, which motion was allowed and judgment entered accordingly. To the pleas of release of errors the Dunlap Hotel Company demurred, its demurrer was sustained by the Appellate Court, and the appellant here assigns error thereon.

Even if appellee had without suit voluntarily paid the amount of rent fixed by the decree, or if, when sued, it had paid the entire amount sued for without calling the attention of the court to the fact that the suit was brought for a sum greater than that to which appellant would be entitled if the decree were correct, none of these things would have

amounted to a release of errors. Any act relied upon as a release of errors must be voluntary in the sense that the party is not required by the decree to do the act, and the voluntary payment, performance or satisfaction of a judgment, order or decree which confers no benefit cannot operate as a release of errors. Payment of a judgment in obedience to a decree does not affect the right to question the decree by writ of error and does not operate as a release of errors even if there is an agreement that a decree shall be executed as entered. (*Chaney* v. *Baker,* 302 Ill. 481; *Thoeming* v. *Hawkins,* 291 id. 454; *Schaeffer* v. *Ardery,* 238 id. 557; *Lott* v. *Davis,* 262 id. 148; *Richeson* v. *Ryan,* 14 id. 74.) At the time of the suit for rent the decree fixing the amount of rent which appellee should pay to appellant had not been reversed and appellee had no defense to the suit as to the amount so fixed. Appellant's suit was based on this decree. The fixing of an amount of rent by the decree was not one of the major questions in the case upon which error is based. Appellee at no time questioned its liability to pay rent for the use and occupation of the hotel building during the time of its occupancy, but it did question the fact as to whether or not, notwithstanding such occupancy and liability to pay rent, the court had a right to decree it to execute a lease for twenty years and to specifically perform a contract to which it was not a party. Under the circumstances of this case, to hold that the mere calling the attention of the court to the fact that appellant was claiming a greater sum than allowed it by the decree upon which the suit was based would operate as such a release of errors as would debar it from prosecuting its writ of error to reverse the decree, would be contrary to natural justice and groundless in reason or law. *Chaney* v. *Baker, supra.*

The evidence showed a wide variance between the plans agreed upon by Dunlap and the Perrys and showed the following respects in which the hotel did not comply with

the terms of the contract and the following defects in construction: Nine fewer rooms; rooms in building generally smaller than original plan; re-enforced concrete construction of building changed to steel frame, subjecting building to hazard of fire and increased maintenance; roof changed from re-enforced concrete fireproof construction to wooden roof; court walls and penthouse walls changed from brick to hollow tile; stone window sills changed to brick; finished hallway floor omitted; shelving omitted from linen rooms and vault; ash-hoist, trunk-lift, auxiliary boiler for live steam to kitchen, letter and key-rack, cigar case, revolving doors, toilet fixtures and window screens omitted; stone work on street fronts omitted; flue for fire-place in lobby omitted; decoration in rooms, hallways and lobby omitted; tile partitions under front stairway omitted; stone coping changed to tile; carpet strips in hallways, doors, etc., omitted; generally cheaper construction, rendering the building far less efficient, more difficult to maintain, less proof against damage and injury by fire, less comfortable for guests and less attractive to the public.

Even if the original contract sought to be enforced had been between appellant and appellee, appellant could not have compelled its specific performance by appellee in a court of equity. A party seeking to enforce the specific performance of a contract must prove that he has complied with all the provisions of the contract requiring performance on his part, or that he was able, ready and willing to do so but was prevented from carrying out those provisions by the other party. (*McDonald* v. *Sautter,* 346 Ill. 67; *Gladstone* v. *Warshovsky,* 332 id. 376; *Stuckrath* v. *Briggs & Turivas,* 329 id. 555.) Appellant seeks to obviate this rule by a claim that full performance on its part was waived by appellee. The bill alleged compliance on its part with the terms of the contract and did not set up a waiver thereof by appellee. It is elementary that a complainant in a chancery suit cannot make one case by his bill in the lower

court and on a review by a reviewing court be allowed to make another and entirely different one. This court has frequently declared that "this court reviews a case presented to the trial court and does not sit to try issues presented for the first time in this court." *Wollenberger* v. *Hoover,* 346 Ill. 511; *Off* v. *Exposition Coaster,* 336 id. 100.

The contract sought to be enforced was not a contract between appellant and appellee. Appellee and appellant never entered into a contract for a twenty-year leasing of the hotel property. At the time of the making of the contract between Dunlap and the Perrys neither appellant nor appellee was in existence. Appellant is a separate and different entity from Dunlap, as is appellee from the Perrys. The contract was not one which ran with the land, and it does not by its terms provide that it shall be binding upon the assignees of the parties. Appellee had no contract whatever with appellant by which it could compel appellant, by specific performance, to give appellee a twenty-year right to use and occupy the premises. A contract will not be specifically enforced by the court unless it is mutual—that is, unless it is of such a character that at the time it was entered into it might have been enforced by either of the parties against the other. Whenever, from the nature of the contract or any other cause, the contract is incapable of being enforced against one party that party is incapable of enforcing it against the other, though its execution in the latter way might in itself be free from the difficulty attending its execution in the former. *Barker* v. *Hauberg,* 325 Ill. 538; *Kuehnle* v. *Augustin,* 333 id. 31.

For the reasons stated, the judgment of the Appellate Court, so far as it reverses the decree of the circuit court of Sangamon county, is affirmed, and the cause is remanded to the circuit court of Sangamon county, with directions to dismiss the bill of complaint of the Jacksonville Hotel Building Corporation for want of equity.

*Reversed and remanded, with directions.*