ROBERT W. DIXON *et al.*, Plaintiffs-Appellants and Cross-Appellees, v. THE CITY OF MONTICELLO *et al.*, Defendants-Appellees (G.M.R., Inc., Defendant-Appellee and Cross-Appellant).—DAVID A. STONE *et al.*, Plaintiffs-Appellees, v. G.M.R., INC., Defendant-Appellant.

Fourth District   Nos. 4—91—0183, 4—91—0189 cons.

Opinion filed November 21, 1991.—Rehearing denied February 19, 1992.

William F. Tracy II and Megan Paisley, both of Miller, Tracy, Braun & Wilson, Ltd., of Monticello, for appellants Robert W. Dixon, Kerri A. Dixon, George G. Green, and Charlotte A. Green.

Hugh Finson, of Monticello, for appellees David A. Stone and Pamela Stone.

Nancy Glidden, of Phebus, Tummelson, Bryan & Knox, and Jeffrey W. Tock, both of Urbana, for appellee City of Monticello.

William C. Wetzel, of Livingston, Barger, Brandt & Schroeder, of Bloomington, for G.M.R., Inc.

JUSTICE McCULLOUGH delivered the opinion of the court:

These consolidated appeals involve questions pertaining to the construction of the zoning ordinance of the City of Monticello, Illinois (City), and specific performance for the sale of the subject property for which the zoning is challenged. On April 30, 1989, David and Pamela Stone (Stones) entered into a contract to sell a single-family residence located at 315 Charter Street, Monticello, to G.M.R., Inc. An amendment to the contract provided:

> "This offer contingent on purchaser obtaining conclusive permission to construct and use parking facilities on subject property in support of Hardee's Restaurant."

Subsequently, G.M.R. sought permission from the City to build the parking lot. G.M.R. was advised by the city engineer and city attorney that the parking lot could be constructed, but no permit to demolish the house on the subject property or construct the parking lot was issued. On October 24, 1989, an action was filed by objectors Robert W. Dixon, Kerri A. Dixon, George G. Green, and Charlotte A. Green (objectors) against the City, the Stones, and G.M.R. seeking declaratory and injunctive relief to prevent the construction of the parking lot allegedly in violation of the City's zoning ordinance (Piatt County case No. 89—MR—4). On November 8, 1989, G.M.R.'s attorney sent a letter to the Stones' attorney giving formal notice of a default under the real estate contract and warning that, unless the Stones furnish proof within 10 days that the City issued conclusive permission to construct and use parking facilities on the subject property, G.M.R. would seek to recover the down payment held in escrow. On December 28, 1989, the Stones filed a complaint against G.M.R. (Piatt County case No. 89—L—21) seeking specific performance of the real estate sales contract and reimbursement from G.M.R. for the interest expenses incurred with regard to the purchase of a home in Philo, Illinois, pursuant to an addendum to the residential real estate sales contract.

The circuit court of Piatt County consolidated the causes for trial. After a hearing, the trial court filed a memorandum order on December 26, 1990, denying the declaratory and injunctive actions filed by the objectors in case No. 89—MR—4; and entering judgment for specific performance in favor of the Stones in case No. 89—L—21, and awarding the Stones reimbursement from G.M.R. for all interest incurred on the purchase of the Philo residence to and including the date of closing on the subject property in Monticello.

G.M.R. appealed the decision in favor of the Stones in case No. 89—L—21 (No. 4—91—0189). The objectors appealed the decision in the declaratory judgment and injunction action, case No. 89—MR—4 (No. 4—91—0183), and G.M.R. cross-appealed. G.M.R.'s position at trial was that the City's ordinances do not permit a parking lot on the subject property.

The first issue to be considered is whether the use of the subject property violates the City's zoning ordinance such that the objectors are entitled to declaratory or injunctive relief. Without reciting the ordinance provisions in great detail, it is sufficient to note that the City has a comprehensive ordinance of zoning regulations.

The objectors own and occupy homes located on property in close proximity to the subject property. The subject property is improved with a single-family residence and detached garage. The entire city block in which these properties are situated is zoned "Urban Residential (RD)." Within 300 feet of the subject property, G.M.R. operates a Hardee's fast-food restaurant. The block on which the restaurant is located is zoned "Business (B)" and is located immediately west of the block containing the subject property.

The trial court found that the "interpretation of [paragraph] 4—305(b) is the controlling issue." That paragraph of the Monticello Municipal Code provides as follows:

"The parking spaces required for any other building or use may be located on an area within 300 feet of said building and two (2) or more owners of buildings may join together in providing the required parking spaces. Where the required parking spaces are not located on the same lot with the building or use served, the usage of the lot or tract upon which said parking spaces are provided shall be restricted by an instrument of record describing the premises for which said parking is provided and assuring the retention of such parking so long as required by these regulations." Monticello, Ill. Municipal Code, ch. 21, art. 4, §3, par. 4—305(b) (1975) (hereinafter Code).

The court found "[Paragraph] 4—305(b) of the Regulations allows non-required off-street parking for nonresidential uses if such parking is within 300 feet of the building served." This finding was apparently the basis for the trial court's denial of injunctive relief in case No. 89—MR—4.

The trial court then ordered the City "to allow or refuse a permit to demolish the Stone house if and when filed, and further, allow or refuse a permit to construct a parking lot on the property in question." It appears from the order entered that although the trial court

denied declaratory relief and plaintiffs' action to prevent zoning, it did order the City to allow or refuse certain permits pursuant to the zoning regulations of the City of Monticello. Compliance with the trial court's order will permit all the parties to this proceeding notice, an opportunity to be heard, and a process of appeal as set forth in the zoning regulations. While we agree with the trial court's order insofar as it requires compliance with the zoning regulations, we do not agree with its finding concerning paragraph 4—305(b) of the Code.

At trial, the parties entered into a stipulation. Among the stipulated facts were (1) by letter of the city attorney dated August 24, 1989, the City indicated it anticipated a permit for the construction of the parking lot would issue; (2) the attorney's opinion was expressed in a letter dated July 14, 1989, to the effect that the zoning ordinance allowed the construction of the parking lot on the subject property; and (3) because of the litigation instituted by the objectors, the permit to build the parking lot did not issue.

The three cases mainly relied on by the objectors are *Parkview Colonial Manor Investment Corp. v. Board of Zoning Appeals* (1979), 70 Ill. App. 3d 577, 388 N.E.2d 877, *Nonnenmann v. Lucky Stores, Inc.* (1977), 53 Ill. App. 3d 509, 368 N.E.2d 200, and *Williams v. City of Bloomington* (1969), 108 Ill. App. 2d 307, 247 N.E.2d 446.

In *Parkview*, plaintiff petitioned for a special use permit to construct two 75-unit three-story apartments on a parcel zoned single-family residence (SR-1). The permit was denied by the city board of zoning appeals. On administrative review, the circuit court required the issuance of the permit. The appellate court reversed, noting that the only permitted special use in an SR-1 district was differential land-neighborhood park developments and inferring that the city council thereby intended to exclude all other special uses from the SR-1 district. The inference was supported by the fact that multi-family residences (MR-2) and community business (B-1) districts permitted the type of development sought by plaintiff. We note that in *Parkview* the process employed included an attempt to have the subject property rezoned, which request was denied. The appellate court decision followed from the circuit court's administrative review of the zoning decision.

In *Williams*, plaintiffs sought to enjoin the use of a single-family residence lot as a driveway or walkway for ingress and egress to a four-unit apartment building located on commercially zoned property. The court concluded that because the use sought to be made of the subject property was not a designated, permissible use under the code, it was prohibited. To hold otherwise, according to the court, re-

duces the zoning ordinance to "a dead letter." (*Williams*, 108 Ill. App. 2d at 313, 247 N.E.2d at 450.) However, this court also recognized that cases involving different ordinances dispel meaningful comparison of the cases such that an earlier decided case may not require a given result in the subsequent case under the doctrine of *stare decisis*. And so, *Williams* does not require a determination in the instant case to the effect that the subject property cannot be a parking lot. In the case at bar, there is an entire article devoted to off-street parking. No such similar provision is cited in *Williams* or *Parkview*. In *Williams*, however, as in *Parkview*, a zoning decision was involved. In *Williams*, the property owner bought two lots zoned for single-family residence and attempted to have them rezoned to accommodate a multifamily dwelling. This request for rezoning was denied. Thereafter, the property owner purchased an adjacent commercially zoned parcel on which to construct the multifamily dwelling. In so constructing the building, a driveway was built across one of the residential lots. When the neighbors instituted an action in the circuit court seeking to prevent the driveway being placed across the residential lot, the City of Bloomington joined in the suit, alleging the driveway violated its zoning ordinance.

*Nonnenmann* also involved the use of a residentially zoned lot as a parking lot. Part of the rationale used to deny use as a parking lot was that nowhere in the zoning ordinance was a parking lot designated as a permissible use in a residential zone. However, the *Nonnenmann* decision did not rest solely on the zoning ordinance, and the case additionally involved lots in a subdivision with restrictive covenants requiring that these lots be residential. No such restrictive covenants are found in this case.

The objectors argue the trial court inappropriately relied on an administrative interpretation of the ordinance and ignored the rule of construction that ambiguity should be resolved by resort to the ordinance as a whole. Certainly if the language of a zoning ordinance is unclear, the court should determine the legislative intent by relating the portion in question to the whole ordinance so as to determine the reasonable and foreseeable impact of the various suggested interpretations. (*Richardson v. Kitchin* (1979), 75 Ill. App. 3d 961, 394 N.E.2d 796.) While it is true that a legislative body is without authority to direct how the judiciary shall construe a legislative enactment (*Palella v. Leyden Family Service & Mental Health Center* (1980), 79 Ill. 2d 493, 404 N.E.2d 228), the city council in this case did not direct the trial court to interpret the ordinance in any particular way. On July 14, 1989, the city attorney wrote a letter to a city official con-

cerning the parking lot on the subject property and the letter concluded that, under paragraph 4—305 of the Code, a parking lot could be constructed. Although the trial judge's memorandum order refers to the letter in question, a fair reading of the order clearly indicates the judge employed independent reasoning to arrive at his conclusion and did not merely adopt the interpretation set forth in the letter. On appeal, the trial court's interpretation of the ordinance is reviewable as a question of law.

In construing a zoning ordinance, the intention of the drafters should be given effect by considering the common and accepted usage of the words employed, the contexts in which they are employed, and the general structure of the ordinance. (*Cosmopolitan National Bank v. County of Cook* (1984), 103 Ill. 2d 302, 469 N.E.2d 183.) Section 3 of article 4 of chapter 21 of the Code (Code, ch. 21, art. 4, §3 (1975)) deals with off-street parking. While parking is not designated as a principal use anywhere else in the ordinance, this fact does not appear to be dispositive. Nor can we agree with the objectors' argument that the use attempted in this case is a public garage since the ordinance clearly differentiates the definitions of "public garage" and "off-street parking space." In addition, the ordinance's drafters obviously intended that off-street parking be required for all uses. Table III sets forth the "Minimum Off-Street Parking Requirements for Nonresidential Uses." (Code, ch. 21, art. 4, §3, Table III (1975).) The sole question to be decided, then, is whether paragraph 4—305(b) allows for the subject property to be used as a parking lot. The trial judge in this case recognized that the City had apparently made a policy determination that a parking lot on the subject property does not adversely affect and can promote public health, welfare, and safety by reducing traffic congestion.

Objectors rely on *DeBartolo v. Village of Oak Park* (1947), 396 Ill. 404, 410-11, 71 N.E.2d 693, 696, which states:

"When a general zoning ordinance is passed, those who buy property in zoned districts have the right to rely upon the rule of law that the classification made in the ordinance will not be changed unless the change will be required for the public good."

■ Clearly, the avoidance of the zoning process in this case opens the door to potentially greater disruption to the City's zoning scheme. We disagree with the trial court's interpretation of the City's zoning ordinance as allowing a parking lot on such property. Paragraphs 3—503(a)(6) and (b) of the Code (Code, ch. 21, art. 3, §5, pars. 3—503(a)(6), (b) (1975)) indicate parking is an "accessory use," controlled

by section 3 of article 4 of chapter 21 of the Code. As defined, "accessory uses" are subsidiary uses located on the same property as the principal use. Nowhere in the ordinance is a commercial parking lot designated a principal use of properties zoned "RD." Nor does paragraph 4—305(b) of the Code specifically allow for a restaurant located on property zoned "B" to place its parking facility on a parcel zoned "RD." Instead, the section merely requires the parking facility to be within 300 feet of the restaurant. Paragraph 7—102 of the Code (Code, ch. 21, art. 7, par. 7—102 (1975)) expressly requires that where there are conflicting interpretations possible, the more restrictive interpretation is the one that should be made. The more restrictive interpretation is that the parking lot is not allowed on the subject property. For this reason, the finding concerning paragraph 4—305(b) entered by the circuit court in case No. 89—MR—4 (No. 4—91—0183) must be reversed.

■ With regard to the request for injunctive relief by the objectors, they have the right to such an order restraining ordinance violations on property within 1,200 feet, in any direction, of their property, if their "property or person will be substantially affected by the alleged violation." Ill. Rev. Stat. 1989, ch. 24, par. 11—13—15; see also *Greer v. Illinois Housing Development Authority* (1986), 150 Ill. App. 3d 357, 501 N.E.2d 723, *aff'd* (1988), 122 Ill. 2d 462, 524 N.E.2d 561.

An injunction is an extraordinary remedy whereby a court may require a party to do a particular thing or refrain from doing a particular thing. (21A Ill. L. & Prac. *Injunctions* §2 (1977).) Injunctions, as a remedy, are not extended to cases which do not fit well-recognized principles. (*People ex rel. Lockwood & Strickland Co. v. Grand Trunk Western Ry. Co.* (1908), 232 Ill. 292, 83 N.E. 839.) In order for an injunction to be granted, it must be shown: (1) it is clear the party seeking relief has a lawful right for which he seeks protection because there is an actual or anticipated violation of the right; (2) the injury sought to be prevented is irreparable; and (3) there is no adequate legal remedy. *Kaplan v. Kaplan* (1981), 98 Ill. App. 3d 136, 423 N.E.2d 1253; 21A Ill. L. & Prac. *Injunctions* §§15, 16, 17, 18, 20 (1977).

The statutory relief extended to citizens under section 11—13—15 of the Illinois Municipal Code (Ill. Rev. Stat. 1989, ch. 24, par. 11—13—15) is to provide enforcement authority where municipal officials are slow or reluctant to act, or are otherwise not protective of the private citizen's interests. Yet, the objectors also point out that, if there is an ordinance violation, the usual remedy would be to object before the zoning board of appeals. There is nothing in the record indicating the zoning board of appeals would not adequately protect the

interests of private citizens in the event objections are filed with regard to an application for rezoning, a variation, or a conditional use permit. Objectors ought first to exhaust their administrative remedies. Even if there were an ordinance violation, objectors have not established a right to an injunction.

The City's stipulation, stating "it anticipated that a permit would be issued by it to G.M.R., Inc., for the construction of a parking lot," is at most an indication that the building inspector would approve the application as allowed by paragraph 6—201(g) of the Code (Code, ch. 21, art. 6, §2, par. 6—201(g) (1975)). Paragraph 6—201(l)(1) of the Code (Code, ch. 21, art. 6, §2, par. 6—201(l)(1) (1975)) allows appeals by "any person aggrieved" which would, in a case such as this, stay the proceedings (see Code, ch. 21, art. 6, §2, par. 6—201(l)(2) (1975)). After notice and hearing, the board of appeals "may recommend to the City Council to reverse or affirm." (Code, ch. 21, art. 6, §2, par. 6—201(l)(4) (1975).) The city council, after receiving the recommendation, "shall decide the appeal." Code, ch. 21, art. 6, §2, par. 6—201(l)(5) (1975).

In the event G.M.R. seeks a variance, "a relaxation of the strict terms of these zoning regulations" (Code, ch. 21, art. 6, §2, par. 6—203 (1975)), paragraph 6—203 of the Code sets forth the procedures with regard to application, public notice, hearing, the zoning board of appeals' recommendation, and the final decision of the city council. Another available alternative to G.M.R. is provided by the provisions of paragraph 6—204 (Code, ch. 21, art. 6, §2, par. 6—204 (1975)), relating to the issuance of a conditional use permit. This paragraph provides essentially the same requirements and procedures as in the application for variance. Since these provisions would allow the objectors to be fairly heard, the trial court's refusal to grant the objectors' request for injunctive relief in case No. 89—MR—4 (No. 4—91—0183) is affirmed.

The next issue is whether, notwithstanding the fact that no permit was issued concerning the use of the subject property as a parking lot and the said use of the property was being challenged in court by objectors, the sellers of the property are entitled to specific performance from the purchaser in case No. 89—L—21 (No. 4—91—0189). On April 30, 1989, the Stones signed a real estate contract for the sale of the subject property to G.M.R. A representative of G.M.R. signed the contract on or about May 1, 1989. The contract is a form for the cash purchase of real estate. In the appropriate blank spaces the legal description and street address of the property were typed, as were the purchase price of $90,000, earnest money of $5,000, the

fact the property was to be sold "as is," and a possession and closing date of May 26, 1989. In the form, no provision regarding the zoning of the property was included. However, the form contract referred to an amendment. The amendment to the contract, which was previously noted, provides:

> "This offer contingent on purchaser obtaining conclusive permission to construct and use parking facilities on subject property in support of Hardee's Restaurant."

All parties to the real estate transaction signed the page containing the amendment.

On June 2, 1989, the Stones and G.M.R. executed an "Addendum to Residential Sales Contract." In this addendum, the time for the closing date was extended to on or before June 16, 1989. In addition, G.M.R. agreed to reimburse the Stones for all interest expense they incur in order to facilitate the Stones' purchase of real estate in Philo, Illinois, for which purchase the Stones had borrowed money. The amount of the interest to be so reimbursed was to be that interest accruing from the time the Stones borrowed the money to the date of closing on the subject property in Monticello. G.M.R. was to reimburse the Stones, in full, at the closing on the sale of the subject property.

After the execution of the contract, a commitment for title insurance was obtained, and a proposed deed and an Illinois real estate transfer declaration form were prepared by Stones' attorney and transmitted to G.M.R.'s attorney. However, the raising of objections by neighboring property owners delayed the closing of the transaction.

Michael C. McCracken, secretary and chief executive officer of G.M.R., described the negotiations leading up to entering into a contract to purchase the subject property as follows. G.M.R. owns 29 restaurants in Illinois. In the spring of 1985, G.M.R. constructed the Hardee's Restaurant in Monticello. After a discussion with the restaurant manager concerning the need for additional parking, McCracken visited the site and determined a need for additional parking existed for the safety and convenience of customers since the parking lot was filled to capacity and some patrons were required to park on the street. He contacted Carol Hawkins, a realtor, requesting she locate suitable property for additional parking.

Among those contacted to purchase property for a parking lot were the Marine Bank with regard to the drive-up facility located in the northwest corner of Hardee's block at the corner of Market and Center Streets; Armsworth Appliance Store, located in the northeast

corner of the Hardee's block at the corner of Center and Charter Streets; the VIOBIN Corporation, which has buildings in the block directly south of the Hardee's but across an open drainage ditch and railroad tracks; and George Green, one of the objectors, whose property is located directly east of Hardee's across North Charter Street. All refused to sell their property. The final contact was with the Stones.

After some negotiation, the Stones agreed to sell their property for the sum of $90,000. David Stone testified that it was 1½ times the value of the house and he felt they could better themselves in regard to their housing by accepting the offer. McCracken recognized the price was high, but testified that Hardee's usually had to overpay for any property it wanted. The name of the purchaser was not disclosed by Hawkins, and David Stone, realizing that because of the selling price, the property might be used for business purposes, expressed a concern as to what the property use was to be. He did not want a bar, liquor store, or an undesirable business located on the property. Hawkins assured him the use of the property would be very respectable.

At some time between the execution of the addendum on June 2 and the extended closing date of June 16, 1989, G.M.R. became aware of the neighbors' objection to the use of the property for a parking lot. The Stones and G.M.R. then informally agreed to postpone the closing date in an attempt to resolve the objection.

McCracken invited the objectors to a meeting. Only Mr. Dixon appeared. After McCracken showed Dixon the latest drawing of the parking lot and discussed G.M.R.'s plans, Dixon became angry, apparently because of McCracken's failure to adequately explain the 300-foot provision of the ordinance. In October 1989, there was a meeting with Dr. Green, who made it clear that he was resolute in his opposition to the parking lot. In the meantime, on July 14, 1989, the city attorney, Jeffrey W. Tock, wrote a letter to Ron Ivall, a city official, regarding a request to construe paragraph 4—305 of the Code. A copy of the letter was apparently received by all parties involved. In his letter, Tock compared the City's ordinance with those in surrounding communities and concluded that, in Tock's opinion, the parking facility could be an appropriate use for the subject property as it is presently zoned. On July 20, 1989, the objectors' attorney sent a letter to G.M.R.'s attorney disputing Tock's construction of the ordinance and indicating a lawsuit would be filed if G.M.R. continued with plans to build the parking lot.

On August 17, 1989, G.M.R. applied for a permit to construct the parking lot. The permit was never issued. No permit to demolish the Stone residence has been requested or given. Nor did G.M.R. petition the City or any of its agencies for a change of zoning or ask the plaintiffs to do so. McCracken testified G.M.R. is sensitive to public opinion and it had second thoughts about the parking lot after opposition arose. While the parking problem is not now as acute as it once was, due to the recession, he still has a concern for the safety and convenience of customers who must park in nearby streets.

On October 8, 1989, the objectors filed their lawsuit. On November 8, 1989, G.M.R.'s attorney sent a letter to the Stones' attorney. The first three paragraphs of this letter state as follows:

"As I indicated to you in our telephone conversation last week, I reviewed with my client the Complaint filed by the Dixons and the Greens relative to the use of the 'Stone property' as a parking lot. Reluctantly, my client has determined that because of the time delay and cost involved it has no alternative other than to terminate its Contract with the Stones.

The Contract specifically made the purchase contingent upon my client being able to use the property as a parking lot relative to its Hardee's restaurant. The Contract called for a closing date on or before May 26, 1989[,] and we have certainly tried to work with you and with the City, and its staff in order to resolve the problem. It now appears that the problem has not been solved and with the threat that at least one member of the Plaintiff group made to Mike McCracken, with an appeal of any adverse ruling being a possibility, the question about use of the property may not be settled within the next year.

Paragraph 12 of the Contract between the parties obligates the buyer to terminate the Contract upon giving notice of default by the sellers. Please consider this as formal notice of default under paragraph 12 of the Contract. In the event that the sellers do not within ten days furnish us with proof that conclusive permission to construct and use the parking facilities on the subject property in support of the Hardee's restaurant has been issued by the City[,] then we will seek to recover the down payment being held in escrow by Pioneer Realty."

On December 2, 1989, the Stones filed their lawsuit.

Specific performance is an equitable remedy requiring a defendant to perform an affirmative act in order to fulfill a contract. (33A Ill. L. & Prac. *Specific Performance* §2 (1970).) Relief is granted when injustice would result otherwise, but if there is an adequate remedy at law,

by way of damages, the request for specific performance will be denied. (*Stevens v. Protectoseal Co.* (1975), 27 Ill. App. 3d 724, 327 N.E.2d 427; 33A Ill. L. & Prac. *Specific Performance* §11 (1970).) Generally, contracts to convey real estate will be enforced by specific performance on the grounds that perfect justice cannot be done at law. (*Hagen v. Anderson* (1925), 317 Ill. 173, 147 N.E. 791.) On review of an action in equity, the chancellor's findings of fact will not be set aside unless those findings are against the manifest weight of the evidence, or there is some other palpable error. *Pasulka v. Koob* (1988), 170 Ill. App. 3d 191, 524 N.E.2d 1227.

In order to be entitled to specific performance, plaintiff must allege and prove the following elements: (1) the existence of a valid, binding, and enforceable contract; (2) plaintiff has complied with the terms of his contract or is ready, willing, and able to perform his part of the contract; and (3) defendant failed or refused to perform his part of the contract. (33A Ill. L. & Prac. *Specific Performance* §106 (1970).) However, even where the contract is clear and unambiguous, specific performance is not a matter of right. Instead, the granting of the remedy rests in the sound discretion of the trial court, as determined from all the facts and circumstances. The granting or denial of such relief is not to be done in an arbitrary or capricious manner. *Sweeting v. Campbell* (1956), 8 Ill. 2d 54, 132 N.E.2d 523.

The contract must provide for mutuality of obligation and remedy. At the time the contract was entered into, it must have been enforceable by either party against the other. (*Jacksonville Hotel Building Corp. v. Dunlap Hotel Co.* (1932), 350 Ill. 451, 183 N.E. 397.) However, a contract which lacked such mutuality while executory may, nevertheless, be specifically enforced if the provisions which could not have been enforced specifically have been fully performed. (*Nyder v. Champlin* (1948), 401 Ill. 317, 81 N.E.2d 923; 33A Ill. L. & Prac. *Specific Performance* §12 (1970).) Moreover, a party cannot raise its own failure to comply with an agreement as a bar to enforcement on the grounds of a lack of mutuality. *Giannini v. First National Bank* (1985), 136 Ill. App. 3d 971, 483 N.E.2d 924, involved the request for specific enforcement of a purchase agreement with regard to a condominium unit. Since the building had not been declared a condominium, the "unit" plaintiff sought did not exist and defendants claimed it was impossible for them to perform their obligation under the purchase agreement. They also argued that there was lack of mutuality since plaintiff could not be forced to purchase a nonexistent unit. However, it was defendants that refused to declare the building a condominium, and the court found defendants' own failure to comply with the agree-

ment could not be turned into a bar to plaintiff's entitlement to the unit. In *Stender v. National Boulevard Bank* (1983), 114 Ill. App. 3d 1041, 449 N.E.2d 873, it was stated that where a contract contained a condition precedent for the benefit of one of the parties, the party for whose benefit the condition precedent ran was required to use reasonable efforts to have the condition occur. In *Grill v. Adams* (1984), 123 Ill. App. 3d 913, 463 N.E.2d 896, it was decided that a party may not take advantage of his own conduct to claim a failure of a condition to defeat his contractual liability. This violates the duty of good faith and fair dealing. In *Grill*, defendant sellers were to obtain out-of-State exchange property as a condition precedent to completion of a real estate sales agreement. Since this condition was inserted for the sole benefit of defendants and defendants failed to use reasonable efforts to secure the exchange property, defendants' conduct was considered a waiver of the condition and they were obligated under the remaining terms of the agreement.

■ Based on the case law, it seems clear that G.M.R. did not do all it could have done to "conclusively" determine it had permission to construct the parking lot on the subject property. The Stones are entitled to specific performance. G.M.R. concedes that the informal agreement to extend the closing date beyond June 16, 1989, was an extension to a reasonable time. (See *Kitsos v. Terry's Chrysler-Plymouth, Inc.* (1979), 70 Ill. App. 3d 728, 388 N.E.2d 1054.) G.M.R. argues that what is reasonable is a question of fact and, in the absence of "conclusive permission," no reasonable time arrived.

Conclusive permission, however, does not mean permission from the neighbors, but permission from the relevant governing authority. G.M.R., at the time of the contract, knew the property was zoned RD. Under the provisions in the amendment of the sales contract, it was G.M.R.'s obligation to use reasonable efforts to secure that permission from the City. Even if G.M.R. felt that the objectors' litigation would deny it the issuance of the building permit, G.M.R. should have proceeded to seek a zoning change or a conditional use permit. The trial court could reasonably find the efforts by G.M.R. were insufficient and that the failure of G.M.R. to obtain permission could not, therefore, be a bar to the relief of specific performance in favor of the Stones. The trial court correctly found that the burden was on defendant, G.M.R., to obtain "conclusive permission" to construct the parking facility. Its decision was not against the manifest weight of the evidence. Nor do we deem that a disposition affirming the specific performance judgment in case No. 89—L—21 (No. 4—91—0189) and reversing the declaratory judgment in case No. 89—MR—4 (No. 4—

91—0183) would be inconsistent. It is G.M.R.'s failure to act in good faith to make reasonable efforts to effect a change in zoning or obtain a variance or conditional use permit which forms the basis for the specific performance ruling, not whether the parking lot may be constructed under the existing ordinance.

The final issue is whether, under the contract for sale of the residential real estate as amended, the sellers were entitled in case No. 89—L—21 to recover from the purchaser interest expense incurred by the sellers in connection with the purchase of a new residence. G.M.R.'s only argument on this issue is that since no closing took place, the Stones are not entitled to reimbursement of interest expense. However, since this court finds the trial court properly granted specific performance, there will be a closing, and the Stones will be entitled to reimbursement of interest expense on that date.

■ The trial court, pursuant to the judgment of specific performance, recognized that the Stones were entitled to a reimbursement of interest accrued to the date of closing. Of course, count II of the Stones' amended complaint seeks recovery of money damages and that, generally, is not a subject for specific performance. Although a plaintiff is not generally entitled to specific performance and damages, a court may award damages to a plaintiff who is entitled to same where the decree, insofar as only specific performance is provided, would not render complete relief as demonstrated by the pleadings and proof. (81A C.J.S. *Specific Performance* §197, at 159 (1977).) This is an appropriate case for an award of this nature.

We rule as follows. In regard to case No. 89—MR—4 (No. 4—91—0183), we have indicated we disagree with the circuit court's finding as to the applicability of paragraph 4—305(b) of the Code in regard to a parking lot on the premises which are the subject of this suit. Accordingly, to the extent that finding be considered a declaratory judgment in response to plaintiffs' request for a declaration of rights, we reverse that portion of the judgment on appeal. Otherwise, we affirm that judgment (No. 4—91—0183) and the judgment in case No. 89—L—21 (4—91—0189).

No. 4—91—0183, Affirmed in part; reversed in part.
No. 4—91—0189, Affirmed.

GREEN and KNECHT, JJ., concur.