2023 IL App (1st) 220602-U
No. 1-22-0602
Order filed January 30, 2023

First Division

NOTICE: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | |
|---|---|
| FRANCISCAN SISTERS OF CHICAGO SERVICE CORPORATION, an Illinois not-for profit corporation, <br><br>     Plaintiff-Appellee, <br><br> v. <br><br> MEADOWS MENNONITE RETIREMENT COMMUNITY ASSOCIATION, INC., an Illinois not-for profit corporation, <br><br>     Defendant-Appellant. | Appeal from the Circuit Court of Cook County. <br><br> No. 19 CH 11294 <br><br> Honorable Alison C. Conlon, Judge, presiding. |

JUSTICE HYMAN delivered the judgment of the court.
Justices Pucinski and Coghlan concurred in the judgment.

**ORDER**

¶ 1       *Held*:    Trial court order granting summary judgment on plaintiff's complaint for specific performance affirmed in the absence of genuine issues of material fact that defendant failed to use commercially reasonable efforts to transfer its beneficial interests in trusts as required by parties' agreement.

¶ 2       Meadows Mennonite Retirement Community Association, Inc. agreed to sell its interest in

a downstate nursing home to Franciscan Sisters of Chicago Service Corporation for cash and

other consideration. Meadows also agreed to use "commercially reasonable efforts" to transfer its beneficial interest in several trusts to Franciscan. When Meadows refused to assist with the transfer, Franciscan filed a complaint for specific performance, asking the trial court to direct Meadows to make and deliver corporate resolutions transferring its beneficial interest. Both parties moved for summary judgment. After a hearing, the trial court entered summary judgment for Franciscan and denied it to Meadows.

¶ 3        Meadows contends the trial court erred because (i) the complaint was time-barred under the agreement, (ii) the Attorney General was an unnamed necessary party, (iii) specific performance is an improper remedy because a third party, the Meadows board of directors, needed to act to transfer the interests, and (iv) a genuine issue of material fact existed regarding whether Meadows's refusal to transfer its beneficial interest was commercially reasonable.

¶ 4        We affirm. Franciscan's complaint was not time-barred, nor was the Attorney General a necessary party. Moreover, specific performance provides the proper remedy, and the trial court correctly found no genuine issues of material fact precluded the entry of summary judgment for Franciscan.

¶ 5                                      Background

¶ 6        Meadows is a not-for-profit charitable corporation providing Christian comprehensive senior living spaces and services in central Illinois. In 2012, Meadows opened an assisted living facility in Normal, IL, owned and operated by The Villas at Mercy Creek, NFP, an Illinois not-for-profit corporation whose sole member was Meadows.

¶ 7        On August 8, 2018, Meadows entered into a "Change of Membership, Transfer of Assets and Services, and Assumption of Liabilities Agreement" ("Agreement") with Franciscan, an Illinois not-for-profit corporation. Meadows agreed to transfer its membership in the Villas to

Franciscan, making Franciscan the sole member, operator, and licensee of the Villas and its Normal facility. Meadows agreed to transfer certain "transferred assets" under section 2.1, including real property, buildings, personal property, and bank accounts at closing. In exchange, Franciscan agreed to pay $250,000 and assume the liabilities of the Normal facility.

¶ 8　　Further, section 2.4 required Meadows to use "commercially reasonable efforts" to transfer to Franciscan its beneficial interest in certain trusts. Relevant here, section 2.4 provided:

"2.4. Trusts. Upon transfer of the Transferred Assets to the Villas in accordance with this Agreement, [Meadows] shall use commercially reasonable efforts to transfer the benefits associated with (i) the Last Will and Testament of Ann Schneckenburger and (ii) the Juanita R, Streid and Susie M. Streid Trusts (collectively, the "Trusts"). [Meadows] agrees to cooperate with Franciscan and the Villas in connection with any legal proceedings arising from the transfer or attempted transfer of the benefits associated with the Trusts and Franciscan agrees to pay any and all reasonable legal fees arising from any such legal proceedings arising from the transfer or attempted transfer of the benefits associated -with the Trusts. Notwithstanding anything to the contrary contained in this Agreement, [Meadows's] covenant to use commercially reasonable efforts to transfer the benefits of the Trusts to the Villas and to cooperate with Franciscan and the Villas in connection with any legal proceedings arising from the transfer or attempted transfer of the Trusts to the Villas shall survive the closing of the transactions contemplated by this Agreement and shall be enforceable by the Villas and/or Franciscan notwithstanding any subsequent change in control of [Meadows]."

¶ 9　　Meadows acknowledges it is the beneficiary of the Trusts and that Heartland Bank and Trust Company is the trustee.

¶ 10    The sale closed on August 9, 2018, the day after the parties signed the Agreement. A month later, Franciscan emailed Meadows to begin assignment of the beneficial interest in the Trusts. The parties frequently communicated about the transfer between September 2018 and July 2019, with Franciscan inquiring whether Meadows's board of directors had signed a resolution approving the transfer. In January 2019, Meadows informed Franciscan of a new management company and board of directors that would discuss the issue.

¶ 11    By September 2019, when Meadows's board had not signed the transfer resolution, Franciscan filed a one-count complaint for specific performance. Franciscan alleged it had performed all terms and conditions under the Agreement, but Meadows violated its unequivocal contractual duty by refusing to transfer its beneficial interest. Franciscan asked for an order directing Meadows to make and deliver the corporate resolution and "otherwise cooperate in effectuating" the transfers.

¶ 12    Meadows filed a motion for summary judgment arguing, in part, that (i) its obligations under section 2.4 terminated 18 months after the date of the Agreement and, thus, the complaint was untimely, (ii) the assignment of the beneficial interest was barred under the language of the Trusts, and (iii) Franciscan failed to name the Illinois Attorney General as a party as required by the Charitable Trust Act. Franciscan responded and filed a cross-motion for summary judgment, arguing entitlement to specific performance as a matter of right.

¶ 13    After a hearing, the trial court granted summary judgment for Franciscan and denied it to Meadows. In its written order, the trial court found (i) section 2.4 is part of a valid and binding contract; (ii) Meadows's duties under section 2.4 are clear, unambiguous, and enforceable, namely, "commercially reasonable" efforts would be taken to transfer the Trust interests; (iii) Meadows' obligations under section 2.4 did not expire at closing; (iv) Franciscan performed

under the Agreement, and (v) no genuine issue of material fact remained because Meadows made no effort to transfer its interests and did not perform its duties under section 2.4. The court also found (i) Franciscan was not required to obtain the approval of the Attorney General or the circuit court of McLean County, the location of the trust property, before Meadows could transfer the beneficial interest, and (ii) Meadows had to assist Franciscan to obtain the approvals. Meadows filed a motion to reconsider, which the trial court denied.

¶ 14                                     Analysis

¶ 15                                Standard of Review

¶ 16        "When parties file cross-motions for summary judgment, they agree that only a question of law is involved and invite the court to decide the issues based on the record." *Pielet v. Pielet*, 2012 IL 112064, ¶ 28. Summary judgment (735 ILCS 5/2-1005 (West 2020)) should be granted only where the pleadings, depositions, admissions, and affidavits on file, when viewed in the light most favorable to the nonmoving party, show no genuine issue as to a material fact and the moving party is clearly entitled to judgment as a matter of law. *Id.* §2-1005(c). Our review is *de novo*. *Pielet*, 2012 IL 112064, ¶ 30. *De novo* review also is appropriate to the extent the case turns on the review from a trial court's interpretation of a contract. *Asset Recovery Contracting, LLC v. Walsh Construction Co. of Illinois*, 2012 IL App (1st) 101226, ¶ 57.

¶ 17                          Complaint was not Time-Barred

¶ 18        Meadows asserts sections 3.4(b) and 3.5(b)(ii) of the Agreement, not section 2.4, control transferring its beneficial interest in the Trusts, and those provisions required Franciscan obtain approval from the Meadows's board of directors before the closing, which it failed to do.

¶ 19        Section 3.4(b) provides, "Prior to the Closing Date, [Meadows] shall obtain all internal approvals of and execution of any and all agreements and other documents and the taking of

any and all other actions contemplated or required by this Agreement to be executed or taken by [Meadows] on or before the Closing Date."

¶ 20    Section 3.5(b)(ii), regarding delivery of closing documents, states, "[a]t the closing, the Parties shall deliver the following documents (the "Closing Documents"): A Secretary's certificate, dated as of the Closing Date, certifying as to the due adoption and continued effectiveness of and attaching a copy of the resolutions of the [Meadows's] Board of Directors approving, with respect to [Meadows], the actions and transactions and actions required or contemplated by this Agreement."

¶ 21    Section 3.4(b) and 3.5(b)(ii) regard transfers made at closing. Conversely, section 2.4 provides "[u]pon transfer of the transferred assets *** [Meadows] shall use commercially reasonable efforts to transfer the benefits associated with" the Trusts. Moreover, section 2.4 states: [Meadows'] covenant to use commercially reasonable efforts to transfer the benefits of the Trusts *** *shall* survive the closing of the transactions contemplated by this Agreement." (Emphasis added.) So, Meadows first had to transfer the real and personal property and other assets listed in section 2.1 to Franciscan before Meadows' obligations under section 2.4 came into effect. In short, sections 3.4(b) and 3.5(b)(ii) apply to the assets transferred at closing only. Thus, those sections requiring prior approvals do not apply to section 2.4 and the transfer of the beneficial interest.

¶ 22    Meadows also contends the trial court erred because the complaint was time-barred under section 5., titled "Survival Periods," which states:

"Except as otherwise expressly provided in this Agreement, all representations, warranties, covenants and agreements contained in this Agreement or in any document delivered at the closing pursuant hereto shall be deemed to be material and to have been relied upon by the

Parties, and shall survive the Closing Date and shall be fully effective and enforceable for a period of twelve (12) months after the Execution Date, but shall thereafter be of no further force or effect, except that (i) the covenants of MMRC set forth Sections 1.4,1.5, 1,6 and 2.4 of this Agreement shall survive for a period of eighteen (18) months following the Closing Date."

¶ 23 Meadows contends its obligations under section 2.4 to assist in the transfer of the beneficial interest expired 12 months after the August 9, 2018, closing, which was almost two months before Franciscan filed its complaint. We disagree. Meadows's argument contradicts the plain language of section 5.1, which states section 2.4 of the Agreement "shall survive for a period of eighteen" months after the closing date. Franciscan filed its complaint well before then.

¶ 24 Moreover, Franciscan asked Meadows to assist in facilitating the transfer of the beneficial interest one month after closing. Meadows refused, resulting in the filing of the complaint. Meadows is solely responsible for the 18-month survival period having passed without signing the corporate resolutions, despite Franciscan's timely requests for assistance.

¶ 25 The trial court correctly found Meadows's obligations under section 2.4 did not expire at closing and Franciscan's claims were not time-barred.

¶ 26                                     Attorney General Not Necessary Party

¶ 27 Meadows contends that because this case involves the transfer of a beneficial interest in a charitable trust, the Attorney General was a necessary party, voiding the summary judgment. See *American Freedom Insurance Co. v. Garcia*, 2021 IL App (1st) 200231, 15 (order issued by court without jurisdiction over necessary party is void, and failure to join necessary party can be raised at any time by any party or by trial or appellate court *sua sponte*).

¶ 28        Meadows correctly notes that under the Illinois Trust Code, the Attorney General has rights of a qualified beneficiary concerning a charitable trust. 760 ILCS 3/110(b) (West 2020). Meadows relies on several cases holding that in a lawsuit involving the validity or the enforcement of a charitable trust, the Attorney General is made a party defendant. See *Stowell v. Prentiss*, 323 Ill. 309, 321 (1926) ("[t]he Attorney General is a proper, and generally necessary, party to proceedings affecting the administration or enforcement of a charitable trust."). See also *In re Estate of Tomlinson*, 65 Ill.2d 382, 387 (1976); *Brown v. Ryan*, 338 Ill. App. 3d 864, 874 (2003) ("[t]he community has an interest in enforcing the trust and the Attorney General represents the community in seeing that the trust is properly construed and that the funds are applied to their intended charitable uses.").

¶ 29        Franciscan's complaint seeks to compel Meadows to comply with the terms of the Agreement by delivering corporate resolutions transferring its beneficial interest in the Trust. Nowhere does Franciscan ask the court to rule on the validity or enforceability of the Trusts. Compelling Meadows to comply with the requirements of section 2.4, as the trial court noted, does not require approval from the Attorney General or the McLean County Circuit Court.

¶ 30                                Specific Performance Was Proper Remedy

¶ 31        Meadows contends specific performance as an improper remedy when it requires action by a third party not named as defendant. Specifically, Meadows asserts the remedy is improper because it requires an order that the board of directors makes and delivers corporate resolutions transferring the beneficial interest in the Trusts; yet, the individual board members were not individually named as defendants.

¶ 32        Meadows cites no cases, and we found none, holding that individual board members must be joined individually in an action against a not-for-profit corporation. Meadows asserts the

General Not for Profit Corporation Act of 1986 (805 ILCS 105/101.01 (West 2020) ("NFP Act") and the Charitable Trust Act ("CTA"), 760 ILCS 55/1 *et seq.* are implied terms of the Agreement and govern the power and discretion of the members of Meadows board to issue corporate resolutions. Still, Meadows cites no provision of the NFP Act requiring individual board members to be named as defendants in a lawsuit against a not-for-profit corporation.

¶ 33    Further, contrary to Meadow's assertion, the members of its board are not trustees of the trust under the CTA. As Meadows notes, under section 3 of the CTA, a trustee may include "a director *** soliciting or holding property for a charitable purpose." But Meadows has conceded it holds the beneficiary interest and Heartland Bank and Trust is the trustee. So the board members do not possess the rights or duties of a trustee.

¶ 34    "Specific performance is an equitable remedy requiring a defendant to perform an affirmative act in order to fulfill a contract." *Dixon v. City of Monticello*, 223 Ill. App. 3d 549, 560 (1991). To be entitled to specific performance, the plaintiff must establish (i) the existence of a valid, binding, and enforceable contract; (ii) the plaintiff has performed their obligations under the contract or is ready, willing, and able to perform, and (iii) the defendant has failed or refused to perform under the contract. *Id.*

¶ 35    The trial court found Franciscan proved the existence of a valid, binding, and enforceable contract, and it complied with the terms of the Agreement. Conversely, the court found Franciscan had established that Meadows failed and refused to perform or attempt to perform its obligations under section 2.4. While Meadows concedes it did not take steps to transfer the beneficial interest in the Trusts, it asserts a genuine issue of material fact exists as to whether it was "commercially reasonable" for its board of directors to refuse to act.

¶ 36        "[I]ssues not raised in the trial court are deemed waived and may not be raised for the first time on appeal." *Haudrich v. Howmedica, Inc.*, 169 Ill. 2d 525, 536 (1996). In the trial court, Meadows argued the term "commercially reasonable efforts" to be vague and unenforceable as a matter of law. The trial court rejected this argument, citing *General Motors Corp. v. State Motor Vehicle Review Board*, 224 Ill. 2d 1, 16 (2007), which recognized the enforceability of that requirement in a contract. Meadows now changes course, proposing its failure to assist Franciscan with transferring the beneficial interest may have been "commercially reasonable." Because Meadows did not raise this issue in the trial court, it is waived.

¶ 37        In the absence of a material fact that Meadows did not perform or attempt to perform its obligations under section 2.4 of the Agreement, the trial court did not err in granting summary judgment for Franciscan.

¶ 38        Affirmed.