LaSALLE NATIONAL BANK, Trustee, *et al.*, Plaintiffs-Appellants, *v.* THE CITY OF WARRENVILLE *et al.*, Defendants-Appellees.

Second District   No. 81-326

Opinion filed April 7, 1982.

Edward M. White, of Carey, Filter and White, of Chicago, for appellants.

Barry Moss, of Moss and Bloomberg, of Bolingbrook, and Marvin J. Glink, of Ancel, Glink, Diamond, Murphy & Cope, of Chicago, for appellees.

PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

Whether the Cities of Warrenville and Naperville, as successors to a private utility company, Westview Utility Co. (Westview), are precluded by a contract between the developer, LaSalle National Bank, trustee, and Naper Venture (Naper) and Westview from charging connection fees and water meter installation charges, is the question before us.

The trial court entered summary judgment in favor of the municipalities and denied Naper's motion for summary judgment. Naper appeals.

On May 24, 1972, Naper entered into a contract with Westview to furnish sewer and water services in an area which Naper was developing. The contract provided, in substance, that Westview would provide sewer and water service, with the developer paying all costs for the extension of sewer and water lines from the present lines to the points in the development required by Naper; the facilities to become the property of Westview as installed; and the contract further provided as pertinent:

"Water meters shall be installed by Utility.

\* \* \*

As units are completed by Developers or their assignees, and tie-on is made to the sewer system, Utility shall refund to Developers a per unit sum of $375 paid to Utility for plant expansion; \* \* \* Utility's maximum obligation to make such refunds shall be 500 units or $187,500.00, \* \* \*.

7. Utility shall charge to the customers in the Property such rates, and shall impose such rules and regulations, as may from time to time be authorized by the Illinois Commerce Commission or such other public agency or body, if any, as may have jurisdiction to authorize such rates, rules and regulations.

\* \* \*

14. This Agreement sets forth the complete understanding between Developer and Utility * * *."

Naper filed a complaint for declaratory judgment which, as amended, alleged the execution of the contract between itself and Westview, the installation by Naper at its own expense of the facilities (defined in the contract as "including mains, service lines, pipes, fittings, valves, hydrants, manholes and lift stations"). An affidavit attached to Naper's motion for summary judgment stated that Naper spent more than $1,000,688.48 for the installation of the sewer and water lines, and paid the additional sum of $187,500 for plant expansion; and that Naper obtained sewer and water service from Westview without payment of tap-on charges; that on or about September 10, 1974, Warrenville purchased the entire utility system from Westview. See *DiSanto v. City of Warrenville* (1978), 59 Ill. App. 3d 931.

The complaint further alleged that under the assignment from Westview to Warrenville, Warrenville obtained the water and sewer system, as well as Westview's rights and obligations under its contract with Naper. Warrenville assumed these rights and obligations, with the exception of the obligation to make refunds for the first 500 units connected. Warrenville further agreed not to "assess, charge or collect any tap in or connection charge with respect to property which [Westview] has already collected" * * * "or which [Westview] would be prohibited from assessing or collecting * * *"; that, however, Warrenville enacted an ordinance requiring payment of water and sewer connection charges and demanded payment of a charge for each water meter installed. The complaint further alleged that in 1977, the City of Naperville acquired the portion of the lines acquired by Warrenville from Westview which served the Naper Venture property. In the assignment agreement Naperville assumed all obligations of Warrenville to the users of the utility services in the area of acquisition. The agreement also provided:

"In the event that any claim of right under said contract as to said tap on fees or water meters results in Naperville receiving less income that [sic] its usual, reasonable and customary fees and charges from the areas covered by said agreements, then and in that event the parties agreed [sic] to share the resultant loss on a 50-50 basis, and Warrenville shall promptly remit its share to Naperville upon receipt of an itemized billing therefor."

The amended complaint further alleged that the City of Naperville also was attempting to assess a connection fee and a charge for water meters; that the ordinances of both Warrenville and Naperville are void as outside of the cities' authorities pursuant to section 11—139—8 of the Illinois Municipal Code (Ill. Rev. Stat. 1975, ch. 24, par. 11—139—8); bear no reasonable relation to costs and, further, deprive Naper of constitu-

tional due process and equal protection of the law in requiring it to pay for the use of sewer and water facilities which it installed at its own expense.

The municipalities' motion for summary judgment was granted and Naper's motion for summary judgment denied, resulting in this appeal.

Naper argues that the contract between it and Westview was complete, and contained no provision that the utility could charge either connection or water meter charges, thus precluding the charges; and that the assignees of Westview are bound by Westview's agreement. The municipalities contend that they have the statutory power to assess connection fees for sewer and water services, that the contract documents do not prohibit these charges, and that Naper is bound by the city sewer and water ordinances.

■■ We agree that the municipalities, in general, possess the statutory power to assess connection fees for sewer and water services. A city may collect a reasonable charge for connection to its water and sewer system from new users of the system. (Ill. Rev. Stat. 1979, ch. 24, par. 11—150—1.) The funds thus collected are to be used primarily for expansion of the system to meet the requirement of new users. (Ill. Rev. Stat. 1979, ch. 24, par. 11—150—1.) The statutory purpose is to enable a city to recoup its capital expenditures in construction, expansion and extension of the sewer and water works system. (*City of Pontiac v. Mason* (1977), 50 Ill. App. 3d 102.) A city may collect connection fees even where the costs of the system have already been recouped or where physical connection of the system has been made, but use had not begun, before the charge was levied. (*City of Pontiac v. Mason* (1977), 50 Ill. App. 3d 102, 106-07; *Heinrich v. City of Moline* (1978), 59 Ill. App. 3d 278, 281. See also *Knollwood Horizons, Inc. v. City of Freeport* (1976), 43 Ill. App. 3d 901, 904.) We conclude that Warrenville and Naperville have statutory authority to charge a connection fee against new or additional users of the water and sewer system.

However, the statutory authority may be limited by contract. (*Wall v. Chicago Park District* (1941), 378 Ill. 81, 93. See also *Atlantic Construction Co. v. City of Raleigh* (1949), 230 N.C. 365, 53 S.E.2d 165.) The question then becomes whether, under the contract between Naper and Westview, the latter would be "prohibited" from collecting or assessing such charges. The contract itself, the parties agree, makes no direct mention of such charges. The trial court thus found that the contract, purported to be the entire agreement between the parties, did not prohibit the charges and thus that the charges were proper under the city's statutory powers.

Both parties rely on the same rules of construction in support of their differing positions:

"If a written contract purports on its face to be a complete expression of the whole agreement it is to be presumed that the parties introduced into it every material item and term, and in construing it the court will not add thereto another term about which the agreement is silent. (*Sterling-Midland Coal Co. v. Coal Co.*, 334 Ill. 281; *Armstrong Paint Works v. Can Co.*, 301 id. 102.) No words can be added to or taken from an instrument and thereby change the plain meaning of the parties as expressed therein. (*Stevens v. Felman*, 338 Ill. 391.) The object of construction is to ascertain the intention which the parties have expressed in the language of the contract, and where there is no ambiguity in the terms used the instrument itself is the only criterion of the intention of the parties. (*McCormick v. Sanford*, 318 Ill. 544.)"

(*Green v. Ashland Sixty-Third State Bank* (1931), 346 Ill. 174, 182.) See also *Decatur Lumber & Manufacturing Co. v. Crail* (1932), 350 Ill. 319, 323; *Westinghouse Electric Elevator Co. v. La Salle Monroe Building Corp.* (1946), 395 Ill. 429, 432-33; *Schuch v. University of Chicago* (1980), 87 Ill. App. 3d 856, 858.

The authorities are cited by Naper, however, to support its contention that the agreement with Westview is unambiguous and complete as to its terms and cannot be added to by requiring payment for connection fees and water meter charges which are not provided for in the agreement. Conversely, the municipalities argue that if the agreement, complete as to its terms, was intended to prohibit connection fees and water meter charges it would have so provided and that the court may not add that provision to the integrated contract. The trial court adopted the rationale of the municipalities.

Naper's assertion that "defendant may not require payment of additional charges for services already covered under the agreement" begs the question. There is nothing in the Naper-Westview agreement which "covers" the fees and charges at issue here. Tap-on fees are not mentioned and the subject of water meters are referred to only by the phrase "shall be installed by the Utility," with no reference to charges for such installation.

■■ The agreement does contain a formula for reimbursement of advances made by Naper to extend the sewer and water service to its proposed development; this "reservation of capacity" formula, however, is not relevant to the matter of connection fees assessed to those who tap on to the system; it is, rather, designed to compensate the utility for the nonuse of part of its capacity for the time that it must wait for new customers to come on line. It is plain that the matter of connection fees was simply not mentioned in the original agreement either expressly or inferentially; nor did the original agreement address the matter of meter

charges, which, in substance, are a type of connection charge. The fact that the utility agrees to "install" the water meters is understandable as the utility would obviously wish to retain control over the amount of services to be used. We cannot draw the inference that, therefore, no charge was intended to be made since the agreement does not so provide.

■■ The contract of assignment states that the city will not collect any connection charge which Westview would be *prohibited* from assessing or collecting under the original agreement. We read this clause as requiring an actual prohibition rather than simply a lack of explicit authorization. We conclude that the cities, who are legislatively empowered to make the charges, may not be prevented from doing so under the contract of assignment.

■■ The original contract contains no prohibition against the connection charges and this court is not free to read in such a prohibition. (*Green v. Ashland Sixty-Third State Bank* (1931), 346 Ill. 174, 182-84; *Schuch v. University of Chicago* (1980), 87 Ill. App. 3d 856, 859; *Herlihy Mid-Continent Co. v. Sanitary District* (1945), 390 Ill. 160, 166; *Decatur Lumber & Manufacturing Co. v. Crail* (1932), 350 Ill. 319, 323-24.) The cities are therefore free to levy the "tap-on" or "connection" charges at issue here to new users of the system and, thus, the trial court did not err in granting summary judgment in favor of the cities. The judgment of the trial court is affirmed.

Affirmed.

REINHARD and NASH, JJ., concur.