JUDITH ZOELLER *et al.*, Plaintiffs-Appellees, v. RICHARD J. AUGUSTINE, Defendant-Appellant.

First District (2nd Division)    No. 1—93—3889

Opinion filed March 21, 1995.

McCORMICK, J., specially concurring.
SCARIANO, P.J., dissenting.

Rieck & Crotty, P.C., of Chicago (Jerome Crotty and Robert McMahon, of counsel), for appellant.

Campbell & Cooper, of Arlington Heights (Miriam Cooper, of counsel), and Morris D. Minuskin, of Chicago, for appellees.

JUSTICE HARTMAN delivered the judgment of the court:

This is an appeal from the circuit court's order granting plaintiffs-sellers' (sellers') motion for summary judgment and ordering specific performance of their real estate sales contract. Defendant-purchaser (purchaser) contends that he made reasonable, albeit unsuccessful, efforts to satisfy the contract's conditions precedent, which could not be accomplished, and that the circuit court erred, therefore, in failing to find the contract null and void. The purchaser appeals.

In October 1989, sellers and the purchaser executed a real estate sales contract in which purchaser agreed to purchase from the sellers the property located at 1628 West Central Road in Arlington Heights.

Paragraph 7 of the form contract provided that the contract was subject to the purchaser obtaining a mortgage commitment by November 25, 1989. It also provided:

> "If, after making every reasonable effort, Purchaser is unable to procure such commitment within the time specified herein and so notifies Seller in writing thereof within that time, the Contract shall become null and void ***."

The purchaser subsequently learned that the property was improperly listed as commercial and was actually zoned residential; however, he was acquiring the property for business purposes and required commercial zoning. The contract thereafter was modified, making it also contingent upon rezoning of the property to commercial zoning. In this regard, the purchaser's lawyer wrote to the sellers' lawyer, stating:

> "[T]his contract must be subject to zoning for commercial purposes with the *cost* burden upon the Purchaser and said rezoning completed within 150 days. If the property is not rezoned, the contract shall be Null and Void." (Emphasis added.)

The purchaser applied for financing at two institutions: both informed him that the property would have to be rezoned prior to his obtaining a loan. He then obtained information from the Village of Arlington Heights about the rezoning process which indicated that applicants for rezoning should submit their plans to the plat and subdivision committee of the Arlington Heights Plan Commission. That committee then makes suggestions and recommendations regarding the plans for the property. Next, applicants submit all necessary materials for a departmental review and staff report. Applicants may then revise their plans before a public hearing is held on the issue. After the hearing, the plan commission votes on whether or not to approve the rezoning. Finally, the village board votes on whether to adopt the ordinance permitting the rezoning.

The purchaser hired E. Tony Ryan, an architect, and together they met with Scott Viger, an Arlington Heights village planner, to discuss the purchaser's plans for the property. In accordance with Viger's suggestions, the plans were revised several times. The purchaser then submitted his plan to the plat and subdivision committee, which requested comments from the plan commission staff. The staff "indicated a preference to relocate the driveway *** in order to combine driveways with the adjacent lot(s) to the west." The staff wanted a cross-access easement to be provided on part of the approved plan so as to limit the curb cuts needed for ingress and egress on Central Road.

The purchaser then met with Viger and Linnea Palmer-O'Neil, an urban planner for the village, who informed him that, before submitting his rezoning application to the plan commission, he needed to provide: a tree survey; a garbage dumpster location; a site signage proposal; a traffic study; a preliminary engineering plan; and a detailed land survey. The purchaser directed Ryan to hire various professionals to conduct a topographic survey, prepare a preliminary engineering plan, and to develop landscaping plans for the property.

On March 1, 1990, the purchaser also met with Ted Eckhardt, the owner of the adjacent property, to discuss creating the common driveway with easements sought by the plat and subdivision committee. On March 28, 1990, Eckhardt informed defendant that he would not agree to the creation of a common driveway between the two properties.

The purchaser periodically informed the sellers through their attorney of the difficulty in obtaining the rezoning.

On June 6, 1990, after the expiration of a 60-day extension, the sellers informed the purchaser that he had waived the rezoning condition precedent by failing to apply for rezoning within the allotted time and that they were ready to schedule a closing on the property. The purchaser's attorney responded by requesting the sellers' attorney to "please contact my office so we may discuss the closing date." According to the sellers' attorney, the parties agreed in a telephone conversation to a closing date of July 23, 1990. The purchaser did not show up at the scheduled closing; nor did he appear on July 27, 1990, the rescheduled date. On July 26, the purchaser's attorney wrote to the sellers, informing them that the purchaser could not obtain financing and requesting an additional 30 days to procure a loan. No closing ever took place.

On November 8, 1990, the sellers filed their first amended complaint in the chancery division of the circuit court of Cook County. Their two-count complaint requested the court to order specific performance of the contract and alleged that the purchaser had breached their contact, for which they sought damages.

On December 18, 1992, the sellers filed their summary judgment motion and, on February 1, 1993, the purchaser filed his response and a cross-motion for summary judgment. Both parties filed affidavits in support of their motions. After a hearing, the circuit court granted the sellers summary judgment on their specific performance count, denied their breach of contract damages claim, and denied defendant's cross-motion for summary judgment. The court found that the sales contract was clear and unambiguous; both parties understood its terms; the purchaser could not claim the contract was void for failure to obtain rezoning because he never applied for rezon-

ing; and since the purchaser did not request an extension of time to obtain financing until after the expiration of the time allotted, that contingency "evaporated." The purchaser timely filed a notice of appeal.

I

■ The appellate standard in summary judgment cases is to determine by *de novo* review, independent of the circuit court's reasoning, whether summary judgment was appropriate; if that review reveals the existence of a material issue of fact or an erroneous interpretation of law, reversal is warranted. (*Arra v. First State Bank & Trust Co.* (1993), 250 Ill. App. 3d 403, 406, 621 N.E.2d 128; *Reed v. Fleming* (1985), 132 Ill. App. 3d 722, 477 N.E.2d 733; *Warren v. Lemay* (1986), 144 Ill. App. 3d 107, 494 N.E.2d 206.) Both grounds for reversal exist in this case.

II

■ Considering the bases upon which summary judgment was granted by the circuit court here, it is clear that reversible error was committed. The rules governing summary judgment procedures, when not given mere lip service but appropriately applied, provide the bases for reversal. One such rule requires not only that documents submitted in response to the motion by a nonmovant be construed liberally in his favor, but that those documents submitted by the movant in support of summary judgment be construed strictly against him. (*Gilbert v. Sycamore Municipal Hospital* (1993), 156 Ill. 2d 511, 622 N.E.2d 788.) If the sellers' documents are construed strictly, summary judgment should have been denied.

■ As a frame of reference, the principle that one must have title or a possessory interest in subject property in order to seek to effectuate rezoning of that property must be considered. Particularly, a contract to purchase, contingent upon rezoning of the subject property, is not a sufficient interest to maintain a legal action without the owner of the property joining in the proceedings. *Clark Oil & Refining Corp. v. City of Evanston* (1961), 23 Ill. 2d 48, 50-51, 177 N.E.2d 191; *Chicago Title & Trust Co. v. Village of Mount Prospect* (1978), 63 Ill. App. 3d 223, 226, 379 N.E.2d 901; *Solomon v. City of Evanston* (1975), 29 Ill. App. 3d 782, 788-89, 331 N.E.2d 380.

Patently, the parties understood this potential problem and the need for the sellers to be involved in the rezoning process when they agreed by their contract that the purchaser would bear only "the *cost* burden" occasioned by the rezoning. Unlike the situation in *Dixon v. City of Monticello* (1991), 223 Ill. App. 3d 549, 558, 585 N.E.2d 609, upon which the dissent relies, nothing in the instant contract placed the onus of pursuing the rezoning solely upon the contingent

purchaser, nor could it have. Reading this provision in the contract strictly against the movant sellers here raises considerable doubt as to their clear legal right to summary judgment under the facts and documents presented, and the circuit court should have so held.

The rules, regulations and applications, provided to putative applicants for rezoning by the Village of Arlington Heights, set forth the requirements that owners and title holders of property subject to rezoning must provide at the very least the title information and the owner's consent in order to go forward with the initial rezoning scheme. Here, for all that is shown in the record, the sellers provided nothing in furtherance of the rezoning procedures; instead, they were content to sit on the sidelines as observers and timekeepers, notwithstanding the fact that they created the instant circumstances by misdescribing the applicable zoning restriction in their real estate listing in the first instance. The purchaser might have called off the agreement right then and there; instead, he endeavored to consummate the sale.

The sellers were not entitled to summary judgment where, as here, the contract terms were subject to a very different interpretation than that given by the circuit court. This case should be tried on its merits.

## III

Even assuming for the sake of argument that the purchaser was alone required to obtain the rezoning, a different result easily could be reached were this case tried. Reading liberally, as we must under the rules, the purchaser's affidavit and that of his architect, soon after the date that the sellers returned the executed contract, the purchaser began to search for financing at several lending institutions. He was unable to secure loans because the subject property was zoned residential and not commercial as represented by the sellers. At the same time, the purchaser timely sought a change in zoning of the premises from residential to commercial. He hired an architect to develop plans for the property and began to assist him in this endeavor. Between November 1989 and February 1990 the purchaser and his architect discussed the proposed zoning change with the Arlington Heights village planner. On a number of occasions the village planner suggested to the purchaser various changes in the plans which had been submitted. Each time the purchaser incorporated those suggestions into his plans. Those revised plans were then submitted to the village planner on January 29, 1990, for review by the village plan commission's plat and subdivision committee, where the purchaser appeared and presented his proposal for the subject property. The committee requested that the plans be revised

to include a common driveway and a cross-easement with the adjoining property to the west and that the purchaser should further discuss this with the committee staff. The purchaser did so.

The purchaser's architect met again with the village planner in February 1990, who made it clear that the rezoning would not be approved unless the purchaser complied with the plan commission committee's directive as to the driveway and cross-easement problem. The village planner also informed the architect that he would need a detailed topographical land survey, an engineered site plan, and a landscaping plan regarding the property in submitting his application to the village plan commission. The purchaser's architect complied, and those studies and plans were ordered.

The prospective purchaser of the adjacent property to the west was identified by the purchaser of the subject property and they began discussions regarding the required common driveway and cross-easements. The adjacent property purchaser ultimately refused to cooperate, and the implementation of the driveway proposal and the cross-easement requested by the plan commission's committee could not be accomplished, through no apparent fault of the purchaser. The adamancy of the adjacent owner's refusal to provide for the common driveway and cross-easement where he was later asked to do so is well documented in the record of his own application for rezoning which was made a part of the record, *e.g.*, "I'm not in favor of *** [the common driveway and cross-easement] because it causes complications with easement agreements ***." The village board of trustees nevertheless continued to refer to the cross-access, ingress/egress easement and driveway in this latter application as late as November 2, 1990, when it approved his application. These records demonstrate that whatever relief was awarded to benefit the property adjacent to the subject property, it came after the demanded closing by the sellers here on July 27, 1990, and, indeed, three months after sellers first filed their lawsuit on September 24, 1990.

The agreement between the sellers and purchaser was not open-ended and did not require continuing attempts to rezone the property beyond the contingency period. When the 150-day zoning contingency period in the addendum to the contract was about to expire, the purchaser sought a 60-day extension of time for the rezoning to be accomplished. This act easily could be regarded by the fact finder as evidence of good faith. There were continuing conversations between the purchaser and his agents and the sellers and their agents concerning the difficulty being encountered in obtaining the cooperation of the adjacent property owner with regard to the common driveway and cross-access easement required by the village.

It must be emphatically added that nothing in the agreement between the parties remotely suggests that the purchaser was required to grant any easement, cross-easement, or joint driveway rights in order that the property be rezoned. In any event, the purchaser informed the sellers that he would not be able to obtain financing until the property was in fact rezoned.

The foregoing facts ineluctably do not support the circuit court's conclusion that "no steps were taken by the buyer to get *** [the property] rezoned."

IV

Is it accurate to say that the purchaser here failed to apply for rezoning as a matter of law? Nothing in the record demonstrates or even suggests that any of the village officials with whom the purchaser or his agents were dealing, or any pamphlets, rules or ordinances, informed the purchaser that other steps could be bypassed and application be made directly to the village board of trustees in rezoning the subject property. An examination of the documents in the record reveals that each step to be taken by an applicant to rezoning is part and parcel of the entire rezoning process. For example, the Arlington Heights development review process pamphlet distributed to applicants for rezoning reveals the following procedural steps to be taken:

"PROCEDURE:

I. PRE-APPLICATION
    1. Meet with ECDD Staff*
    2. Meet with Plat & Sub Committee*

II. SUBMIT MATERIALS/STAFF REVIEW
    1. Submit petition application*
    2. Submit all materials necessary*
    3. Departmental review
    4. Staff report prepared & given to petitioner

III. PETITIONERS RESPONSE/REVISIONS
    1. Petitioner revises plans*
    2. Staff reviews

IV. PUBLIC HEARING/PLAN COMMISSION
    1. Schedule hearing
    2. Public notice
    3. Plan Commission approves or denies
    4. Plan Commission minutes approved

V. VILLAGE BOARD
    1. Village Board meets and approves or denies
    2. Village Board adopts ordinance

VI. RECORDING
1. Of Ordinance
2. Of Final Plat
*Petitioner's Initiative."

When the record is considered fairly it becomes clear that the purchaser here substantially complied with the application for rezoning procedures prescribed by the village through step III, as previously noted. Village personnel evidently regarded it so in having allowed the procedure to reach points III 1 and 2. Steps IV, V and VI are not to be taken upon the petitioner's initiative in any event. To hold as a matter of law that the applicant did not take reasonable steps to secure rezoning under these facts has no support in law or equity or, for that matter, in common sense.

It is clear from the foregoing that there is no independent application available which authorizes an applicant to break out of the procedural steps prescribed and make an independent application to the village board for rezoning. The circuit judge was able to grasp this concept, having said, "[y]ou don't even have to go through the planning commission *if you want to be suicidal about it.*" (Emphasis added.) These are matters which could have and should have been explored at a trial on the merits of the controversy. Only then could a fact finder determine whether it would have been reasonable for an applicant to continue with other steps in the process. A fact finder could find, under these circumstances, that the purchaser here *did apply* for rezoning and was stymied in his efforts by village authorities and the adjoining land owner. That question cannot be answered as a matter of law on this record for summary judgment.

The sellers scheduled a closing of the real estate contract notwithstanding the fact that the purchaser informed the sellers' attorney that he could not close because approval for rezoning was unattainable and he could not procure financing without it. The trier of fact could find that the purchaser justifiably refused to close under those circumstances.

The foregoing facts hardly demonstrate a disinclination on the part of the purchaser to do all that he was able to do within the time frame given in order to fulfill the terms of the sales agreement. Whether the purchaser acted reasonably or not under the circumstances is a classic case for trial by a fact finder rather than a finding as a matter of law, as the circuit court chose to do in this case. This cause must be reversed and remanded for trial.

■ For the foregoing reasons, the decision of the circuit court is reversed and the cause remanded for trial.

JUSTICE McCORMICK, specially concurring:

I concur in the reversal of the trial court by the majority opinion and its statements of law as general principles. However, the issues discussed by the majority opinion need never have been reached had it focused on the pivotal question, albeit not addressed by the trial court or the parties, whether the real estate sales contract continued to exist throughout the course of the dealings between the parties. My firm conviction in the appropriateness of this approach compels me to state my views.

It is uncontroverted that the original contract was modified to provide a contingency for rezoning, *i.e.*:

> "[T]his contract must be subject to zoning for commercial purposes with the cost burden upon the Purchaser and said rezoning completed within 150 days. *If the property is not rezoned, the contract shall be Null and Void.*" (Emphasis added.)

The plain meaning of this contract provision is that the contract becomes null and void if the rezoning does not occur within the time frame agreed upon. This contract provision is self-executing by operation of law and does not require either of the parties to perform any act. The only inquiry necessary to determine if the contract became null and void under this provision is whether the property was rezoned prior to the expiration of the time agreed upon. It is uncontroverted that this did not occur. Hence, the contract became null and void by operation of law and was unenforceable.

There is no language in the contract placing the burden of attempting to obtain the rezoning on the purchaser or seller. The trial court's conclusion that the rezoning contingency evaporated because the purchaser never applied for rezoning is erroneous. The trial court impermissibly added a nonexistent term to the contract, *i.e.*, the purchaser had a legal obligation to file a petition for the rezoning. Under the provisions in the contract, the purchaser was not required to file, reasonably pursue or even pray for the rezoning. We cannot speculate, create or infer terms or conditions not present in the written contract between the parties. (*Sterling-Midland Coal Co. v. Great Lakes Coal & Coke Co.* (1929), 334 Ill. 281, 290, 165 N.E. 793 (where a written contract purports on its face to be a complete expression of the whole agreement, it is presumed that the parties introduced into it every material item and term, and a court, in construing it, will not add thereto another term about which the agreement is silent); see also *Gordon v. Bauer* (1988), 177 Ill. App. 3d 1073, 1088, 537 N.E.2d 809, *appeal denied* (1989), 125 Ill. 2d 564; *La Salle National Bank v. City of Warrenville* (1982), 105 Ill. App. 3d 643, 647-48, 434 N.E.2d 549; *Schuch v. University of Chicago* (1980), 87 Ill. App. 3d 856, 859, 410 N.E.2d 258.) The failure to specify that one of the par-

ties had an obligation to attempt to obtain the rezoning does not make an otherwise clear and unambiguous provision ambiguous.

It is my conclusion that the contract became null and void. Therefore, the trial court's order granting summary judgment and awarding a monetary judgment in favor of plaintiffs should be reversed and this matter remanded to the trial court for entry of judgment in favor of defendant and against plaintiffs.

PRESIDING JUSTICE SCARIANO, dissenting:

Because I believe that the trial court appropriately entered summary judgment in favor of plaintiffs, I dissent.

Initially, I believe that the majority misapprehends the cases it cites for its suggestion that a contract purchaser has insufficient interest in the subject property to obtain rezoning without the participation of the property owner. Each of those cases stands for the proposition that a party challenging the constitutionality of a zoning ordinance must own the property. (*Clark Oil & Refining Corp. v. City of Evanston* (1961), 23 Ill. 2d 48, 177 N.E.2d 191 (holding that a party with only an option to purchase certain realty contingent upon its rezoning lacked standing to challenge the validity of the existing zoning ordinance, while expressly declining to determine whether it had sufficient interest in the subject property to seek a zoning variation); *Chicago Title & Trust Co. v. Village of Mount Prospect* (1978), 63 Ill. App. 3d 223, 379 N.E.2d 901 (holding that since the plaintiff did not show that it held undisputed title to, or a possessory interest in, a tract of property, it lacked standing to attack the validity of the zoning ordinance governing its use); *Solomon v. City of Evanston* (1975), 29 Ill. App. 3d 782, 331 N.E.2d 380 (holding that a contract purchaser had standing to seek a writ of *mandamus* compelling the city to issue a certificate of compliance necessary to build a nursing home).) A party attacking the validity of a zoning ordinance must show that the restraint it imposes has no substantial relation to the public health, safety and welfare. A nonowner obviously cannot make such a showing. (*Clark*, 23 Ill. 2d at 50, 177 N.E.2d at 192.) However, a party requesting a variance or zoning change, as in the present case, makes no claim that the existing ordinance is unconstitutional; it merely seeks to persuade the municipality to permit a certain type of property use in the future, thus acknowledging the validity of the village's enactment.

Defendant's argument that he acted reasonably under the circumstances hinges on his perception that applying for rezoning would have been futile. However, the mere anticipation that fulfillment of a condition precedent will be unlikely is insufficient to excuse a party

from making reasonable efforts to satisfy the condition. See *Cummings v. Beaton & Associates, Inc.* (1992), 249 Ill. App. 3d 287, 309-10, 618 N.E.2d 292, 304-05, *appeal denied* (1993), 149 Ill. 2d 648, 612 N.E.2d 512; *Dixon v. City of Monticello* (1991), 223 Ill. App. 3d 549, 561-62, 585 N.E.2d 609, 618-19.

In *Dixon,* the real estate sales contract was contingent on the purchaser's " 'obtaining conclusive permission to construct and use parking facilities.' " (223 Ill. App. 3d at 551.) The purchaser applied for a permit to construct a parking lot, but none issued. Objectors to the proposed parking lot filed suit to prevent its construction. Shortly thereafter, the purchaser communicated to the sellers that since the contingency in the contract did not occur, the contract was terminated. We held that the sellers were entitled to specific performance of the contract, noting that the purchaser failed to make reasonable efforts to obtain conclusive permission to build the lot. We found that the purchaser was obligated to seek a conditional use permit or a change in zoning regardless of the obstacle presented by the objectors' suit. *Dixon,* 223 Ill. App. 3d at 559-62, 585 N.E.2d at 617-19; see also *Wissahickon Realty Corp. v. Boyle* (1956), 385 Pa. 198, 199-203, 122 A.2d 720, 721-22 (holding that the defendant wrongfully terminated a lease which was conditioned upon the local liquor board's approving her license application when she withdrew her application after an investigator for the board informed her that it would be denied).

Similarly, I would reject defendant's contention that he acted reasonably in failing to apply for rezoning because he had concluded that such action would be futile. Although I recognize the efforts put forth by defendant, holding that he acted reasonably renders " 'the execution of the contract an idle and meaningless ceremony.' " (*Dasenbrock v. Interstate Restaurant Corp.* (1972), 7 Ill. App. 3d 295, 302, 287 N.E.2d 151, 156, quoting *Carlton v. Smith* (1936), 285 Ill. App. 380, 384, 2 N.E.2d 116.) Defendant's decision to refrain from actually applying to the village board prevented fulfillment of the condition precedent and amounted to a waiver of that condition. Viger's intention to withhold his recommendation for the project and the plan commission's "hope" that a common driveway would be created, did not, in themselves, preclude the village board from approving the rezoning. In fact, according to the uncontroverted affidavit of William V. Enright, an Arlington Heights urban planner, the board had previously approved a development project involving property located within the same block as the property at issue in this case even though the applicant and adjacent property owner did not agree to a common driveway.

Defendant argues, and the majority agrees, that he was obligated only to "assume the costs of the attempted rezoning," not to apply for rezoning, particularly when such application would have been unavailing. In my view, defendant's inaction in response to his speculation regarding the outcome of the application process does not support a finding of reasonable efforts. His failure to formally apply to the village board precluded all possibility that he could have convinced the board to approve his plans. Compare *Dodson v. Nink* (1979), 72 Ill. App. 3d 59, 390 N.E.2d 546.

The majority notes that although the adjacent property owner refused to agree to a common driveway with defendant, the village board of trustees continued to refer to the cross-easement up until the time it approved his application. However, of significance is not the board's continued desire for the cross-easement, but rather, its willingness to approve the application, which it freely granted, despite the adjacent owner's obduracy on this issue. It is worthy of note that the adjacent property owner did not let the imprecations of village officers stop him from taking the second step in the village's procedural requirements, namely, the filing of an *application* for the rezoning he sought. Accordingly, since the board demonstrated its flexibility regarding common driveways, it cannot be said, as a matter of law, that it would have denied defendant's application and that he was reasonable in failing to submit an application to that authority.

Furthermore, defendant did not, as the majority asserts, "substantially" comply with the first three procedural steps in obtaining a change in the zoning ordinance. Defendant concedes that he made no application for rezoning, and the omission of an application, required in the second step, demonstrates his failure to adhere to the procedure outlined by the village.

I also note that defendant failed to seek an extension to obtain financing until well after the allotted time period for notification had expired. Indeed, by failing to apply for rezoning, defendant *ipso facto* eliminated any chance that he could get financing. The trial judge, therefore, properly concluded that the contract was "not voidable for failure to get financing without notice." See *Djomlija v. Urban* (1982), 107 Ill. App. 3d 960, 438 N.E.2d 558.

In sum, to analogize the issue here with an example taken from the game of baseball, even if a batter hits a ball over the fence, it avails him nothing if he fails to touch first base, no matter how many of the others he may have properly "visited."