9/3/96

1-94-4386)
1-95-3128)
1-95-3129) Cons.

SARAH KERNATS, a minor, by CYNTHIA KERNATS, ) Appeal from the
her mother and next friend, CYNTHIA KERNATS, ) Circuit Court
of
individually, and ANDREW KERNATS, ) Cook County.
 )
 Plaintiffs-Appellants, )
 v. )
 )
SMITH INDUSTRIES MEDICAL SYSTEMS, INC., )
d/b/a CONCORD/PORTEX, INC., a foreign )
corporation, )
 )
 Defendant-Appellee, )
 and )
 )
HOWARD GRUNDY, M.D., EVANGELICAL HEALTH )
SYSTEMS, d/b/a CHRIST HOSPITAL AND MEDICAL )
CENTER, an Illinois Corporation, HIGH TECH )
MEDICAL PARKS DEVELOPMENT CORPORATION, )
an Illinois Corporation, HIGH TECHNOLOGY, )
INC., an Illinois Corporation, CARMENCITA )
GALVEZ, M.D., SOUTHWEST OBSTETRICS AND ) Honorable
GYNECOLOGY LTD., an Illinois Corporation, ) Joseph N.
Casciato
 ) Judge Presiding
 Defendants. ) 
------------------------------------------------)
JOYCE OSHODI, individually and as mother and )
next friend of KENNETH OSHODI, a minor, )
 )
 Plaintiffs-Appellants, )
 v. )
 )
SMITH INDUSTRIES MEDICAL SYSTEMS, INC., )
d/b/a CONCORD/PORTEX, INC., a foreign )
corporation, )
 )
 Defendant-Appellee, )
 and )
 )
MICHAEL REESE HOSPITAL AND MEDICAL CENTER, )
an Illinois Corporation, NORMAN GINSBERG, )
M.D., EUGENE PERGAMENT, M.D., DR. MELTZER, )
ALAN CADKIN, M.D., BETH FINE, DIAGNOSTIC )
ULTRASOUND, P.C., ASSOCIATION FOR WOMEN'S )
HEALTH CARE, LTD., PRENATAL GENETIC PROGRAM )
OF ILLINOIS, INC., COOK UROLOGICAL INC., ) Honorable 
a wholly owned subsidiary of COOK INC., ) Robert V.
Boharic
 ) Judge Presiding
 Defendants. ) 
------------------------------------------------)
MARY SUSAN WILLIAMS, as mother and next )
friend of JOHN CALVIN WILLIAMS, a minor, )
 )
 Plaintiff-Appellant, )
 v. )

SMITH INDUSTRIES MEDICAL SYSTEMS, INC., )
d/b/a CONCORD/PORTEX, INC., a foreign )
corporation, ALAN CADKIN, M.D., and ILLINOIS )
MASONIC MEDICAL CENTER, )
 )
 Defendants-Appellees, )
 and )
 )
DIAGNOSTIC ULTRASOUND, P.C., NORMAN GINSBURG, )
M.D., Individually and as an employee, agent, )
and/or ostensible agent of ASSOCIATION FOR ) Honorable
WOMEN'S HEALTH CARE, LTD., PRENATAL GENETIC ) Jennifer
Duncan-
PROGRAM OF ILLINOIS, INC., ) Brice 
 ) Judge
Presiding. 
 Defendants. ) 

 PRESIDING JUSTICE HARTMAN delivered the opinion of the court:
 This action involves three consolidated appeals. Plaintiffs
in all three cases filed suit against defendant Smith Industries
Medical Systems, Inc., d/b/a Concord/Portex, Inc., to recover
damages for injuries allegedly caused by a medical product that it
manufactured, distributed, and sold. In all cases, the circuit
court entered summary judgment in favor of defendant on the ground
that plaintiffs' claims were preempted by the Medical Device
Amendments of 1976 (the "MDA") (21 U.S.C. 360c-360l (1988)) to
the Federal Food, Drug, and Cosmetic Act (21 U.S.C. 301-395
(1988)). Plaintiffs in all three cases appeal those judgments.
 Following oral argument in this appeal, the parties
successfully moved that this court await the ruling of the United
States Supreme Court in Medtronic, Inc. v. Lohr, 518 U.S. ___, ___
L. Ed. 2d ___, 116 S. Ct. 2240 (1996) (Medtronic), which involved
issues similar to those presented in this case: whether
plaintiffs' state law tort claims are preempted by the MDA.
 The allegations and undisputed facts in all three cases are
essentially the same. In each case, the mother underwent chorionic
villus sampling ("CVS") during her pregnancy. CVS is a medical
procedure performed during the first trimester of pregnancy to
obtain a sample of fetal tissue which is subsequently analyzed by
geneticists for genetic abnormalities. Defendant manufactured,
distributed, and sold the CVS catheter used in each CVS procedure. 
Plaintiffs allege that the CVS procedure caused the minors to be
born with limb abnormalities.
 Plaintiffs in all three appeals asserted identical theories of
liability: (1) strict products liability based on the allegedly
defective design and manufacture of the CVS catheter, failure to
warn, and inadequate instructions; (2) breach of express and
implied warranties; and (3) common law negligence based on failure
to warn, inadequate testing, and negligent design of the CVS
catheter.
 The CVS catheters involved received Food and Drug
Administration (FDA) premarket approval on August 9, 1990. The
catheter is used in obtaining chorionic tissue samples making
possible prenatal diagnosis of genetic abnormalities. 55 Fed. Reg.
42779 (1990). On August 17, 1990, the FDA granted defendant
additional premarket approval for the warning label on the CVS
catheter.
 Defendant successfully moved for summary judgment in all three
cases, based upon asserted MDA preemption of plaintiffs' state law
claims. The circuit courts found no just reason to delay
enforcement or appeal of the orders pursuant to Supreme Court Rule
304(a) (155 Ill. 2d R.304(a)). Plaintiffs timely filed notices of
appeal from those respective orders. We consolidated the cases for
purposes of appeal.
 I
 Summary judgment properly may be entered if the pleadings,
exhibits, affidavits and depositions on file disclose no genuine
issue of material fact entitling the movant to judgment as a matter
of law. Dudek, Inc. v. Shred Pax Corp., 254 Ill. App. 3d 862, 868,
626 N.E.2d 1204 (1993); Bernard v. Sears, Roebuck & Co., 166 Ill.
App. 3d 533, 534, 519 N.E.2d 1160 (1988). The principal issue,
that of preemption, is a question of law which will be examined
under a de novo standard of review. Zoeller v. Augustine, 271 Ill.
App. 3d 370, 374, 648 N.E.2d 939 (1995); American Health Care
Providers, Inc. v. County of Cook, 265 Ill. App. 3d 919, 923, 638
N.E.2d 772 (1994).
 The MDA comprehensively regulates medical devices. The FDA is
authorized to classify medical devices intended for human use into
three categories based on the degree of regulation necessary to
assure safety and effectiveness. See 21 U.S.C. 360c. See
generally Medtronic, 116 S. Ct. at 2246.
 Class I devices, such as tongue depressors, are subject only
to general controls on manufacturing processes because they pose
little threat to public health and safety. 21 U.S.C.
360c(a)(1)(A); Stamps v. Collagen Corp., 984 F.2d 1416, 1418 (5th
Cir. 1993). Class II devices, such as bone-conduction hearing
aids, for which "general controls by themselves are insufficient to
provide reasonable assurance of the safety and effectiveness of the
device," are subject to special controls. 21 U.S.C.
360c(a)(1)(B); 21 C.F.R. 874.3300 (1995). Class III devices,
applying to the CVS catheter in this case, present "a potential
unreasonable risk of illness or injury," and are subject to the
most stringent MDA controls. 21 U.S.C. 360c(a)(1)(C).
 In order to market a Class III device, a manufacturer must
provide the FDA with a "reasonable assurance" that the device is
both safe and effective. Medtronic, 116 S. Ct. at 2246, citing 21
U.S.C. 360e(d)(2). This is accomplished by obtaining premarket
approval (PMA), a rigorous process that requires manufacturers to
submit to the FDA detailed information regarding the safety and
efficacy of their medical devices. Medtronic, 116 S. Ct. at 2246-
47.
 As part of the PMA application for a Class III device, a
manufacturer must submit a bibliography of all reports concerning
the device's safety and effectiveness, an outline of the device's
components and properties, a description of the manufacturing
process, safety data, samples of the device, copies of all proposed
labeling, and any other information the FDA requests. 21 U.S.C.
360e(c)(1). See also 21 C.F.R. 814.20 (1995). The application
is referred to a panel of qualified experts for study and
submission of a report and recommendation respecting approval. 21
U.S.C. 360e(c)(2). The FDA retains the right to withdraw its
approval if it finds that a device previously approved is unsafe or
ineffective. 21 U.S.C. 360e(e).
 Two important exceptions to the PMA requirement allow Class
III devices to reach the marketplace without PMA review. First, a
grandfather provision allows pre-1976 medical devices to remain on
the market until such time as the FDA initiates and completes the
requisite PMA. See 21 U.S.C. 360e(b)(1)(A); 21 C.F.R.
814.1(c)(1) (1995). Second, the MDA allows devices that are
"substantially equivalent" to preexisting devices to avoid the PMA
process in order to permit them to compete with grandfathered
devices. See 21 U.S.C. 360e(b)(1)(B). See generally Medtronic,
116 S. Ct. at 2247.
 Manufacturers of "substantially equivalent" Class III devices
must submit to a limited form of review known as "premarket
notification" to the FDA (the process is also known as a "510(k)
process"), which allows the device to be marketed without further
regulatory analysis if the FDA decides that it is "substantially
equivalent" to a preexisting device. Medtronic, 116 S. Ct. at
2247. The 510(k) notification process is limited in scope when
contrasted to the PMA process. Whereas the PMA process requires
about 1,200 hours of review, the 510(k) process is completed in an
average of only 20 hours. Medtronic, 116 S. Ct. at 2247. Section
510(k) notification requires little information and is seldom
rejected by the FDA. Medtronic, 116 S. Ct. at 2247. The PMA
procedure was followed in the instant cases.
 II
 The Constitution provides that the laws of the United States
"shall be the supreme Law of the Land *** any Thing in the
Constitution or Laws of any state to the Contrary notwithstanding." 
U.S. Const., art. VI. State law that conflicts with Federal law is
"without effect." Maryland v. Louisiana, 451 U.S. 725, 746, 68 L.
Ed. 2d 576, 595, 101 S. Ct. 2114, 2129 (1981). Nevertheless, when
considering a preemption question, there is an assumption that a
federal law will not supersede the historic police powers of states
unless the purpose of Congress is clear and manifest. Cipollone v.
Liggett Group, Inc., 505 U.S. 504, 516, 120 L. Ed. 2d 407, 422, 112
S. Ct. 2608, 2617 (1992) (Cipollone); Medtronic, 116 S. Ct. at
2250.
 Congressional purpose is the "ultimate touchstone" in every
preemption case. Medtronic, 116 S. Ct. at 2250, quoting Retail
Clerks International Association v. Schermerhorn, 375 U.S. 96, 103,
11 L. Ed. 2d 179, 184, 84 S. Ct. 219, 222 (1963). Congress' intent
may be stated explicitly in the language of the statute or
implicitly contained in its structure and purpose. Cipollone, 505
U.S. at 516, 120 L. Ed. 2d at 422-23, 112 S. Ct. at 2617;
Medtronic, 116 S. Ct. at 2250-51. Absent an express congressional
command, state law is pre-empted "if that law actually conflicts
with federal law, [citation], or if federal law so thoroughly
occupies a legislative field 'as to make reasonable the inference
that Congress left no room for the States to supplement it. 
[Citation.]'" Cipollone, 505 U.S. at 516, 120 L. Ed. 2d at 423,
112 S. Ct. at 2617.
 Section 360k(a) of the MDA provides in pertinent part:
 "[N]o State or political subdivision of a
 State may establish or continue in effect with
 respect to a device intended for human use any
 requirement--
 (1) which is different from, or in
 addition to, any requirement applicable
 under this chapter to the device, and
 (2) which relates to the safety or
 effectiveness of the device or to any
 other matter included in a requirement
 applicable to the device under this
 chapter." 21 U.S.C. 360k(a).
 Although section 360k(a) expressly portends to preempt state law,
it does so ambiguously. Medtronic, 116 S. Ct. at 2250, 2255.
 In Medtronic, the Supreme Court noted that the scope of
federal preemption under section 360k is ambiguous because the
language of the statute "is not entirely clear." 116 S. Ct. at
2255. This fact, coupled with the express congressional grant of
authority to the FDA to implement the provisions of the MDA (see 21
U.S.C. 360k(b)), rendered the FDA "uniquely qualified" to
determine whether a particular form of state law conflicts with the
MDA's objectives. Medtronic, 116 S. Ct. at 2255-56. These
considerations provided sufficient reason to give "substantial
weight" to the FDA's construction of the statute. Medtronic, 116
S. Ct. at 2256.
 The Medtronic Court found the following FDA regulations most
salient in resolving the preemption question. See Medtronic, 116
S. Ct. at 2257. "State *** requirements are preempted only when
the [FDA] has established specific counterpart regulations or ***
other specific requirements applicable to a particular device ***." 
21 C.F.R. 808.1(d) (1995). Further, section 360k(a) "does not
preempt State or local requirements of general applicability where
the purpose of the requirement relates either to other products in
addition to devices (e.g., requirements such as general electrical
codes, and the Uniform Commercial Code (warranty of fitness)), or
to unfair trade practices in which the requirements are not limited
to devices." 21 C.F.R. 808.1(d)(1) (1995). See also 21 C.F.R.
808.1(d)(6)(ii) (1995)
 The majority in Medtronic emphasized that the primary concern
of the MDA was that preemption occur only where a "particular state
requirement" threatened to interfere with a "specific federal
interest." 116 S. Ct. at 2257. The Supreme Court then essentially
identified a two-pronged inquiry in this type of case. First, the
"specific" federal requirements must be reviewed; if found
"applicable to the device" in question, the requirements will
preempt state law only if they are "specific counterpart
regulations" or "specific" to a "particular device." Medtronic,
116 S. Ct. at 2257.
 Second, the "particular" state requirements must be examined. 
In order to be preempted, state requirements must, "with respect
to" medical devices, be "different from, or in addition to" federal
requirements, and relate "to the safety or effectiveness of the
device or to any other matter included in a requirement applicable
to the device." Medtronic, 116 S. Ct. at 2257. State requirements
of "general applicability" are not preempted except where they have
"the effect of establishing a substantive requirement for a
specific device." 21 C.F.R. 808.1(d)(6)(ii) (1995); Medtronic,
116 S. Ct. at 2257.
 The Supreme Court cautioned that preemption analysis under the
MDA "require[s] a careful comparison" between the assertedly
preempting federal requirement and the allegedly preempted state
requirement to determine whether they fall within the scope of the
statute and regulations. Medtronic, 116 S. Ct. at 2257-58.
 The Medtronic Court was divided as to whether state common-law
damages actions could ever be preempted by the MDA. A majority of
the Court held that such actions do impose "requirements" under the
MDA and are therefore preempted when the other conditions are
satisfied. Medtronic, 116 S. Ct. at 2262 (O'Connor, J., concurring
in part and dissenting in part). The majority based this
conclusion on its reading of Cipollone, in which the Supreme Court
noted that "'[state] regulation can be as effectively exerted
through an award of damages as through some form of preventive
relief. *** [Citation.]'" 505 U.S. at 521, 120 L. Ed. 2d at
426, 112 S. Ct. at 2620.
 In Medtronic, the medical device in question was a pacemaker,
a Class III device. The manufacturer of the pacemaker notified the
FDA that it intended to market the pacemaker as a device that was
"substantially equivalent" to products already on the market; it
therefore took advantage of 510(k)'s expedited review process and
escaped PMA scrutiny. Medtronic, 116 S. Ct. at 2248. Plaintiff
there was injured when her pacemaker failed. She and her husband
sued the manufacturer under negligence and strict liability counts,
alleging defective design and manufacture, failure to warn, and
inadequate instructions. 116 S. Ct. at 2248. The manufacturer
successfully moved for summary judgment, arguing that the tort
claims were preempted by the MDA. The Federal district court
dismissed plaintiffs' entire complaint, and the Court of Appeals
reversed in part and affirmed in part. 56 F.3d 1335 (11th Cir.
1995).
 The Supreme Court held that none of plaintiffs' state law tort
claims were preempted by the MDA. Medtronic, 116 S. Ct. at 2259. 
With respect to the defective design claims, the Court concluded
that under the 510(k) process, the pacemaker never had been
formally reviewed for safety or efficacy; the focus of that
procedure had been on equivalence, not safety. Because that
process did not impose a federal "requirement," there was no
preemption. Medtronic, 116 S. Ct. at 2254.
 Concerning plaintiffs' manufacturing and labeling claims, the
manufacturer argued that the general federal regulations governing
the labeling and manufacture of all medical devices were federal
"requirements," sufficient to preempt plaintiff's claims. See 21
C.F.R. 801.109, 820.20-820.198 (1995). The Supreme Court
rejected that contention, observing that the federal labeling and
manufacturing regulations "reflect important but entirely generic
concerns about device regulation generally, not the sort of
concerns" contemplated by the preemption provision of the MDA. 
Medtronic, 116 S. Ct. at 2258. In addition, the general state
common-law requirements in the case were not specifically developed
"with respect to" medical devices and were not "the kinds of
requirements" that would impede the implementation and enforcement
of specific federal requirements. Medtronic, 116 S. Ct. at 2258. 
Accordingly, none of the claims based on defective manufacturing or
labeling were preempted by the MDA.
 III
 In the case sub judice, defendant submitted an application to
the FDA for approval of its CVS catheter pursuant to section
360e(c)(1) of the MDA. In August 1989, the Obstetrics and
Gynecology Devices Panel, an FDA advisory committee, reviewed and
recommended approval of the application. The FDA's Center for
Devices and Radiological Health approved the application and
notified defendant on August 9, 1990. See 55 Fed. Reg. 42779
(1990).
 Defendant urges that the Medtronic decision is not controlling
since the CVS catheter, unlike the pacemaker at issue in Medtronic,
"ran the gauntlet" of PMA review and obtained FDA approval for its
safety and effectiveness. We agree that the facts in the present
case are different from those in Medtronic because the medical
device here underwent rigorous PMA scrutiny. Yet, we are obliged
to follow the analytical framework and guidance provided by the
Supreme Court in that case.
 One prong in the Medtronic analysis is whether there is a
"specific" federal requirement "applicable to the device" at issue. 
Whether the PMA review process is sufficiently concrete to impose
such a preempting federal requirement was not considered by the
Supreme Court, but was addressed by several courts prior to that
ruling. Most of those decisions hold that PMA review constitutes
a specific federal "requirement" within the meaning of section 360k
and regulation section 808.1(d). See, e.g., Martello v. Ciba
Vision Corp., 42 F.3d 1167, 1169 (8th Cir. 1994); Stamps v.
Collagen Corp., 984 F.2d 1416, 1421-22 & n.3 (5th Cir. 1993). But
see Kennedy v. Collagen Corp., 67 F.3d 1453, 1458-60 (9th Cir.
1995). We conclude, as have the majority of courts, that the PMA
process is a specific federal requirement.
 The second prong to be considered is whether the corresponding
state requirement was "specifically developed 'with respect to'
medical devices." Medtronic, 116 S. Ct. at 2258. The Medtronic
Court held that common-law claims challenging the manufacturing and
labeling of medical devices were not preempted by the MDA because
they were simply "general obligations" imposed by the State on
manufacturers; they were not state requirements specifically
developed "with respect to" medical devices. 116 S. Ct. at 2258.
 Here, plaintiffs' common-law claims based on the manufacture
of the CVS catheter, the failure to warn, and inadequate
instructions, are also "general obligations" applicable to all
manufacturers and, under the holding in Medtronic, are not
requirements specifically established for medical devices. 
Therefore, they are not preempted under the MDA. Plaintiffs'
claims based on defective design and inadequate testing allege that
defendant defectively designed and failed to adequately test the
CVS catheter. Although these allegations relate to the specific
medical device at issue here, they arise, nevertheless, from
general duties applicable to every manufacturer. The Medtronic
Court explained:
 "The legal duty that is the predicate for the
 Lohrs' negligent manufacturing claim is the
 general duty of every manufacturer to use due
 care to avoid foreseeable dangers in its
 products. Similarly, the predicate for the
 failure to warn claim is the general duty to
 inform users and purchasers of potentially
 dangerous items of the risks involved in their
 use. These general obligations are no more a
 threat to federal requirements than would be a
 state-law duty to comply with local fire
 prevention regulations and zoning codes, or to
 use due care in the training and supervision
 of a workforce. These state requirements
 therefore escape pre-emption, not because the
 source of the duty is judge-made common-law
 rule, but rather because their generality
 leaves them outside the category of
 requirements that 360k envisioned to be
 'with respect to' specific devices such as
 pacemakers." (Emphasis added.) Medtronic,
 116 S. Ct. at 2258.
 Similarly here, plaintiffs' claims emanate from general common-law
duties and are not the sort of state requirement that section 360k
was intended to preempt.
 Defendant urges that, as a matter of public policy, allowing
this case to go to a jury would thwart Congress' intent to
encourage the development of ground-breaking medical devices that
operate to improve the health and longevity of the American
people. Although Congress' desire to promote the development of
medical technology was clearly expressed by the passage of the MDA,
its legislative history indicates that "any fears regarding
regulatory burdens were related more to the risk of additional
federal and state regulation rather than the danger of preexisting
duties under common law." Medtronic, 116 S. Ct. at 2253. 
Moreover, any such concern was "far outweighed" by Congress'
concern for the safety of those who use medical devices. 
Medtronic, 116 S. Ct. at 2253.
 Accordingly, we conclude that plaintiffs' common-law tort
claims, based as they are upon general liability principles, are
not preempted by the MDA.
 IV
 Plaintiffs' remaining claims, alleging breaches of express
warranty and implied warranties of merchantability and fitness,
were not addressed by the Medtronic Court as to whether these types
of claims were preempted by the MDA.
 Breach of warranty claims, unlike the negligence and strict
liability claims raised by plaintiffs, are not common-law tort
actions, but are sanctioned by positive legislative enactments of
state law. See 810 ILCS 5/2-313 (West 1994); 810 ILCS 5/2-314
(West 1994). They therefore present a different question than the
one the Medtronic Court addressed.
 We turn to plaintiffs' claim that defendant breached the
implied warranties of merchantability and fitness. The FDA
regulations specifically provide, as an example of a permissible
general requirement, that the Uniform Commercial Code warranty of
fitness is not preempted. 21 C.F.R. 808.1(d)(1) (1995);
Medtronic, 116 S. Ct. at 2257. Because these state requirements
are of "general applicability," and not "specifically developed
'with respect to' medical devices," they do not fall within the
purview of section 360k. We conclude that these claims are not
preempted by the MDA.
 Concerning the breach of express warranty claims, plaintiffs
allege that defendant marketed its product with the express
warranty that the CVS catheters were fit for the purpose intended,
were of marketable quality and free from defects, and would not
injure the fetuses of pregnant women.
 Our review of this question begins with the Supreme Court's
decision in Cipollone. There, plaintiff brought numerous claims,
including one alleging breach of express warranty, against a
cigarette manufacturer based on certain statements in its
advertisements made to his deceased mother. Cipollone, 505 U.S. at
508, 120 L. Ed. 2d at 418, 112 S. Ct. at 2613. Federal law
required that all cigarette packages contain a health warning, and
a federal preemption provision precluded states from imposing a
requirement with respect to the advertising of cigarettes whose
packages provided the mandated federal warning. The Cipollone
plurality concluded the manufacturer's express warranty that
smoking did not "present any significant health consequences" was
not preempted by the federal provision because the warranty was a
"contractual commitment voluntarily undertaken" by the cigarette
manufacturer. Cipollone, 505 U.S. at 525-26, 120 L. Ed. 2d at 428-
29, 112 S. Ct. at 2622. The plurality reasoned that "[a]
manufacturer's liability for breach of an express warranty derives
from, and is measured by, the terms of that warranty. Accordingly,
the 'requirements' imposed by an express warranty claim are not
'imposed under State law,' but rather imposed by the warrantor." 
(Emphasis in original.) Cipollone, 505 U.S. at 525, 120 L. Ed. 2d
at 428, 112 S. Ct. at 2622.
 In the context of the MDA, previously there was a split of
authority in the federal courts with regard to whether a breach of
express warranty claim was preempted. Compare Martin v.
Telectronics Pacing Systems, Inc., 70 F.3d 39, 42 (6th Cir. 1995),
cert. granted and judgment vacated by, 518 U.S. ___, ___ L. Ed. 2d
___, 116 S. Ct. 2576 (1996), and Duvall v. Bristol-Myers-Squibb
Co., 65 F.3d 392, 400-01 (4th Cir. 1995), cert. granted and
judgment vacated by, 518 U.S. ___, ___ L. Ed. 2d ___, 116 S. Ct.
2575 (1996) (preemption) with Michael v. Shiley, Inc., 46 F.3d
1316, 1327 (3d Cir. 1995), and Kennedy, 67 F.3d at 1459-60 (no
preemption). Courts concluding that express warranty claims were
not preempted followed the lead in Cipollone. In Michael v.
Shiley, the court stated:
 "Express warranties arise from the
 representations of the parties which are made
 the basis of the bargain and do not result
 from the independent operation of state law. 
 *** The parties to a contract, not the state,
 define the substantive obligations of the
 contract and hence any express warranties. 
 While the state provides for the enforcement
 of the parties' bargain, it does not define
 each party's duties." 46 F.3d at 1325.
 Because the MDA preempted only state requirements having the force
of law, not private agreements, express warranties were not
preempted. Shiley, 46 F.3d at 1325. We concur.
 Decisions holding that express warranty claims are preempted
by the MDA were limited to facts involving express warranties based
on FDA-mandated labeling, packaging, and advertising, not claims
based on a manufacturer's voluntarily-made representations
regarding its product. Duvall, 65 F.3d at 400-01. See also King
v. Collagen Corp., 983 F.3d 1130, 1135 (1st Cir. 1993) (opinion of
Torruella, J.). In addition, the judgments in Martin and Duvall
since have been vacated by the Supreme Court, as earlier noted. 
Accordingly, those cases no longer have the force of law.
 In the present case, the assertions forming the bases of the
breach of express warranty claims arise by defendant's own express
representations, not by a state-imposed duty. Therefore, express
warranties by a manufacturer are not state "requirements" and thus
fall outside of the scope of section 360k.
 From the foregoing, we conclude that none of plaintiffs'
state-law claims are preempted by the MDA and the circuit courts
erred in granting defendant's motions for summary judgment. 
Accordingly, the judgments of the circuit courts are reversed and
the causes are remanded for further proceedings not inconsistent
with this opinion. 
 Reversed and remanded.
 DiVITO and BURKE, JJ., concur.